942 F.2d 824
 138 L.R.R.M. (BNA) 2522, 120 Lab.Cas. P 10,979
 Robert FLANIGAN; Steve Battista; Brian Mohr; James
Murphy; Vincent Cappella, Plaintiffs-Appellants,
v.
(INTERNATIONAL BROTHERHOOD OF TEAMSTERS, CHAUFFEURS,
WAREHOUSEMEN AND HELPERS OF AMERICA) TRUCK DRIVERS
LOCAL NO. 671; United Parcel Service,
Inc., Defendants-Appellees.
 No. 1412, Docket 91-7021.
 United States Court of Appeals,
Second Circuit.
 Argued April 19, 1991.
Decided Aug. 23, 1991.
 
 Otto P. Whitt, Bloomfield, Conn., for plaintiffs-appellants.
 Gregg D. Adler, Hartford, Conn. (Mary E. Kelly, Gould, Livingston, Adler & Pulda, of counsel), for defendant-appellee (International Broth. of Teamsters, Chauffeurs, Warehousemen and Helpers of America) Truck Drivers Local No. 671.
 Barry J. Waters, New Haven, Conn. (Charles W. Peterson, Murtha, Cullina, Richter and Pinney, of counsel), for defendant-appellee United Parcel Service.
 Before FEINBERG, VAN GRAAFEILAND and MCLAUGHLIN, Circuit Judges.
 VAN GRAAFEILAND, Circuit Judge:
 
 
 1
 Robert Flanigan, Steve Battista, Brian Mohr, James Murphy and Vincent Cappella (appellants), part-time or former part-time employees of United Parcel Service, Inc. (UPS), appeal from a summary judgment of the United States District Court for the District of Connecticut (Burns, C.J.) dismissing their hybrid section 301 claims (29 U.S.C. § 185(a)) against UPS and their collective bargaining representative, Truck Drivers Local No. 671 of the International Brotherhood of Teamsters, Chauffeurs, Warehousemen and Helpers of America (the Union). The gravamen of appellants' action is that UPS violated its Collective Bargaining Agreement in several respects and the Union failed to represent appellants properly in their resultant grievances. See Vaca v. Sipes, 386 U.S. 171, 185-86, 87 S.Ct. 903, 914-15, 17 L.Ed.2d 842 (1967); McKee v. Transco Prods., Inc., 874 F.2d 83, 86 (2d Cir.1989). In accordance with Supreme Court teachings, we may find a breach of the Union's duty of fair representation in the instant case only if its conduct towards appellants as members of the bargaining unit was "arbitrary, discriminatory, or in bad faith." Vaca, supra, 386 U.S. at 190, 87 S.Ct. at 916; Haerum v. Air Line Pilots Ass'n, 892 F.2d 216, 221 (2d Cir.1989). With this brief legal reference as background, we examine separately the several claims made by appellants.
 
 WORK RULES AND SENIORITY RIGHTS
 
 2
 UPS is engaged in the interstate transportation of parcels, with shipping terminals and distribution depots scattered throughout the country. One of these facilities, known as the "Hartford Hub", is the setting for the instant litigation. The building that houses this "Hub" is larger than four football fields. Twenty-four doors located on one side of the building are used for unloading. Elsewhere around the building's perimeter are seven distribution areas, each of which is served by a conveyor belt and is identified by the belt color, e.g., "Pink Belt", "Orange Belt", etc. Parcels are routed and loaded in these various distribution areas, which contain a total of 65 loading doors. Other specialized areas, for purposes such as rewrap and sorting, are located in the interior of the building. Each work area is manned by a separate crew.
 
 
 3
 UPS uses three shifts of workers to operate its huge facility. The day shift and night shift consist mainly of full-time workers. The twilight shift, which fills the gap between the two major shifts, is made up of part-time employees. Part-time employees are guaranteed a minimum of three hours and are paid overtime if they work more than five hours. When the part-time crew at any of the unloading, specialized, or belt areas completes the work assigned to it for the day, its members are required to punch out on the time clock and leave the premises. On some occasions, the crew at one location will complete the tasks assigned to it for the day while the crew at another location is still at work. Included in the second crew may be one or more employees who have less part-time seniority than some of the members of the first crew. The principal issue between the parties in this litigation is whether those members of the first crew with greater seniority should be permitted to bump the less senior members of the second crew and complete the balance of the bumped members' assigned tasks.
 
 
 4
 We find nothing in the Collective Bargaining Agreement between UPS and the Union that precludes UPS from using different crews in the several work areas. Indeed, it is hard to conceive how UPS could operate its large building in an orderly and efficient manner under any other system. Although part-time employees such as appellants have their own seniority list, which is separate and distinct from that of the full-time employees, the bargaining agreement provides that "[s]eniority does not give an employee the right to choose any specific unit or load." In the absence of evidence that the Union arbitrarily discriminated among the part-time crews, the mere fact that the crews did not always complete their work at the same time and leave the Hub together does not establish a breach of the duty of fair representation. See Ford Motor Co. v. Huffman, 345 U.S. 330, 338-39, 73 S.Ct. 681, 686-87, 97 L.Ed. 1048 (1953); Haerum, supra, 892 F.2d at 221. Appellants submitted no evidence of such arbitrary discrimination as would warrant a reasonable, fair-minded jury in finding in their favor on this issue. See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 252, 106 S.Ct. 2505, 2512, 91 L.Ed.2d 202 (1986). Indeed, according to appellant Brian Mohr, "just about everyone was denied time at one day, or another, because their belt got done sooner than somebody else's, or the sort aisle was done and got punched out."
 
 
 5
 Appellants' claim that their seniority gives them the right to bump less senior members of other crews is precluded by Article 55 section 1(c) of the Collective Bargaining Agreement, which gives senior employees preference only if they "are available at such time as the work is assigned." Obviously, an employee who starts the twilight shift working on one belt is not available to undertake work then being assigned on one of the other belts. That is how the New England Parcel Grievance Committee interpreted and applied the specific contract provision:
 
 
 6
 The grievant was not available, not completed his work assignment when the work was assigned to junior people, therefore he is not entitled to it. Art. 55 [section] 1(c) is not intended for the bumping of junior employees off their assigned work.
 
 
 7
 Other UPS facilities in the northeast read Article 55 section 1(c) in the same manner. This is a logical interpretation of the section, and the Union cannot be faulted for acceding to it.
 
 
 8
 In an effort to placate those Union members who were unhappy with Article 55 section 1(c), the Union's Secretary-Treasurer, Thomas Robidoux, attempted to work out an informal understanding with UPS, pursuant to which the company would permit bumping of less senior members of other crews if more than twenty minutes of work remained available for the crew in question. Because appellants were dissatisfied with this arrangement, which in fact was made for their benefit, UPS withdrew its consent to the arrangement and insisted upon to-the-letter compliance with the Collective Bargaining Agreement. No claim of wrongdoing can be predicated on this exercise by UPS of its contractual rights. In sum, the district court had ample grounds for dismissing on the merits the portion of appellants' complaint dealing with UPS's work rules and the alleged abuse of appellants' seniority rights.
 
 
 9
 However, presented with appellees' alternative contention that appellants' claims were barred by the six-month limitation period prescribed in DelCostello v. International Bhd. of Teamsters, 462 U.S. 151, 172, 103 S.Ct. 2281, 2294, 76 L.Ed.2d 476 (1983), the district court relied upon that alternative contention in dismissing appellants' work rules and seniority rights claims. We agree that the limitation period constituted a second valid reason for dismissing these claims.
 
 
 10
 As a general rule, the six-month limitation period begins to run when a plaintiff knows or reasonably should know that the union has breached its duty of fair representation. Santos v. District Council of New York City and Vicinity of United Bhd. of Carpenters and Joiners of Am., 619 F.2d 963, 969 (2d Cir.1980). Put another way, "[a] cause of action ordinarily accrues when 'the plaintiff could first have successfully maintained a suit based on that cause of action.' " Id. at 968-69 (quoting Bell v. Aerodex, Inc., 473 F.2d 869, 873 (5th Cir.1973)).
 
 
 11
 The Collective Bargaining Agreement between UPS and the Union became effective on August 1, 1987. Appellants became aware no later than August 1988 that both UPS and the Union interpreted the contract to permit the use of separate work crews and to preclude the bumping by seniority that appellants claimed as their right. If appellants had a cause of action, it accrued by that time. The Union's subsequent failure to enter the lists upon appellants' behalf on these issues cannot be treated as a continuing violation that precluded the running of the limitation period. See Engelhardt v. Consolidated Rail Corp., 756 F.2d 1368, 1370 (2d Cir.1985), aff'g 594 F.Supp. 1157 (N.D.N.Y.1984); Bedat v. McLean Trucking Co., 119 LRRM 2945 (D.Conn.), aff'd, 794 F.2d 676 (2d Cir.1984), cert. denied, 471 U.S. 1101, 105 S.Ct. 2325, 85 L.Ed.2d 843 (1985); see also, Alcorn v. Burlington Northern R.R. Co., 878 F.2d 1105, 1108 (8th Cir.1989); Ratkosky v. United Transp. Union, 843 F.2d 869, 875 (6th Cir.1988); Arriaga-Zayas v. International Ladies Garment Workers' Union-Puerto Rico Council, 835 F.2d 11, 15 (1st Cir.1987), cert. denied, 486 U.S. 1033, 108 S.Ct. 2016, 100 L.Ed.2d 604 (1988); Metz v. Tootsie Roll Indus., Inc., 715 F.2d 299, 306 (7th Cir.1983), cert. denied, 464 U.S. 1070, 104 S.Ct. 976, 79 L.Ed.2d 214 (1984). Insofar as the district court's judgment of dismissal was directed to appellants' allegations concerning UPS's work rules and the violation of appellants' seniority rights, the judgment is affirmed.
 
 SUPERVISORS DOING BARGAINING UNIT WORK
 
 12
 Article 54 of the New England Supplement to the Collective Bargaining Agreement, which is applicable to Local 671, provides that supervisors will not perform any work assigned to covered employees "except for the purpose of training, demonstration, safety education or emergencies." In paragraph 11 of appellants' complaint, they alleged that "[f]or the past six months and continuing to date, Supervisors of defendant UPS have done bargaining unit work in direct violation of Article 49 [sic] of the Collective Bargaining Agreement." In its answer, Local 671 admitted so much of this paragraph as alleged that during the preceding six months UPS had occasionally violated Article 49 [sic] by permitting supervisors to perform bargaining unit work. In their depositions, several appellants went further, testifying that the problem of supervisors doing the work of covered employees was one of longstanding and that this had been a daily or continuous occurrence for at least three or four years. It is not clear whether this practice resulted from an overly broad interpretation by UPS of the term "emergencies" or a complete disregard of this and the other three conditional exceptions. In view of appellants' assertions that supervisors had been doing the work of covered employees on a daily basis for a number of years, it would appear that more than a definitional problem was involved. On the merits, therefore, this portion of appellants' claim does not lend itself to summary disposition, and the question whether the district court correctly held that it was barred by the six-month limitation period must be answered. We conclude that, as to appellant Cappella, it must be answered in the negative.
 
 
 13
 Appellants commenced this action on June 15, 1989. As best we can determine from the sketchy and unsatisfactory record, the only appellant who filed a grievance relating to the supervisors within the six months that preceded that date was Cappella, who did so on June 7 and 8, 1989. The last grievances of Battista and Flanigan were filed in August 1988, almost four months beyond the six-month limitation period. Mohr and Murphy filed no grievances at all. Unlike the situation with regard to the work crews and the seniority rules, there was no proof that prior to December 15, 1988 appellants knew or reasonably should have known that the Union would not process grievances directed to the doing of bargaining unit work by supervisors. Indeed, evidence in the record indicates that as late as November 1989 the Union was processing grievances on this issue and receiving assurances from UPS that the work was being done pursuant to the Collective Bargaining Agreement or that it would be discontinued.
 
 
 14
 The district court's finding that appellants "knew or should have known for several years prior to filing their lawsuit of alleged violations of Section 54" does not justify that court's conclusion that "[t]he complained-of grievances having occurred more than six months prior to the commencement of the suit" the complaint is time-barred. Because the Union was appellants' exclusive bargaining agent, appellants were required in this hybrid section 301 action to prove that the Union breached its duty of fair representation before proceeding against UPS. DelCostello, supra, 462 U.S. at 165, 103 S.Ct. at 2291; Vaca, supra, 386 U.S. at 186, 87 S.Ct. at 914. The "indispensable predicate" of a section 301 action against an employer is a "demonstration that the Union breached its duty of fair representation." United Parcel Serv., Inc. v. Mitchell, 451 U.S. 56, 62, 101 S.Ct. 1559, 1563, 67 L.Ed.2d 732 (1981). It is the actual or imputed knowledge of the Union's breach, rather than the employer's violation, of the Collective Bargaining Agreement that starts the limitation period running.
 
 
 15
 Because appellant Cappella preserved his rights against UPS and the Union by filing a grievance relative to the supervisors within the six-month period and because the question of contract violation on this issue cannot be disposed of in summary fashion, we reverse as to Cappella the dismissal of charges relating to the supervisors' alleged breach of the Collective Bargaining Agreement. As to the remaining appellants, the dismissal of those charges is affirmed.
 
 TRANSFER OF EMPLOYEES
 
 16
 Appellants' remaining contention on appeal is based upon the alleged transfer of three employees within the bargaining unit without loss of job seniority. Once again, appellants run headlong into the rule that they cannot recover without a showing that the Union violated its duty of fair and impartial representation. DelCostello and Vaca, supra. Because appellants did not ask the Union to process a grievance on this issue, they cannot complain that the Union failed to represent them properly. See Mechmet v. Four Seasons Hotels, Ltd., 825 F.2d 1173, 1178-79 (7th Cir.1987); Stelling v. International Bhd. of Elec. Workers Local Union No. 1547, 587 F.2d 1379, 1391 (9th Cir.1978), cert. denied, 442 U.S. 944, 99 S.Ct. 2890, 61 L.Ed.2d 315 (1979); Babrocky v. Jewel Food Co., 645 F.Supp. 1396, 1424 (N.D.Ind.1986); Harbers v. Shop 'N Save Warehouse Foods, Inc., 605 F.Supp. 244, 246 (S.D.Ill.1985).
 
 
 17
 The judgment of the district court is affirmed in all respects except as to the claim of appellant Cappella that supervisors were doing bargaining unit work in violation of the Collective Bargaining Agreement. As to that issue, the judgment is reversed, and the matter is remanded to the district court for further proceedings consistent with this opinion. No costs to either party.