Linda **BUTTRY** and Richard Lacey, Plaintiffs,

v.

**GENERAL SIGNAL CORPORATION, and New York Air Brake Corporation, and Glass, Molders, Pottery, Plastics and Allied Workers International Union, AFL–CIO, CLC, Local No. 78B, and Glass, Molders, Pottery, Plastic and Allied Workers International Union, AFL–CIO, CLC, Defendants.**

**Civ. No. 93–CV–1255 (FJS–DNS).**

United States District Court, N.D. New York.

Dec. 22, 1994.

Hancock & Estabrook (Renee James, of counsel), Syracuse, NY, for plaintiffs.

Bond, Schoeneck & King (Paul M. Sansoucy, of counsel), Syracuse, NY, for defendant, New York Air Brake Corp.

Satter & Connor Law Firm (Mimi Satter, of counsel), Syracuse, NY, for defendants, Glass, Molders, Pottery, Plastics & Allied Workers Intern. Union, AFL–CIO, CLC, Local No. 78B.

GMP Intern. Union (Carl S. Yaller, pro hac vice), Media, PA, for Glass, Molders, Pottery, Plastics & Allied Workers Intern. Union, AFL–CIO, CLC.

### DECISION AND ORDER

SCULLIN, District Judge.

### PROCEDURAL BACKGROUND

This matter is before the court on defendant Glass, Molders, Pottery, Plastics and Allied Workers International Union, CLC's ("International Union") motion for summary judgment from plaintiffs' claims of breach of duty of fair representation under the National Labor Relations Act, 29 U.S.C. § 159 and breach of the collective bargaining agreement under § 301 of the Labor Management Relations Act, 29 U.S.C. § 185.

Earlier in this action, on March 23, 1994, co-defendant General Signal Corporation ("General Signal") was granted judgment on the pleadings. Co-defendant Glass, Molders,

Pottery, Plastics and Allied Workers International Union, AFL–CIO, CLC, Local No. 78B ("Local 78B") has not appeared in this action and is alleged to be decertified and defunct. Thus the International Union and New York Air Brake are effectively the only remaining defendants.

## FACTS

In late 1990 and early 1991, General Signal became interested in selling its Watertown, New York subsidiary New York Air Brake Company ("New York Air Brake"), and the subsidiary's three units: a brake unit, a pump unit and a foundry unit. Plaintiffs were employed by New York Air Brake in its pump unit and were represented by Local 78B. Local 78B was party to a collective bargaining agreement with New York Air Brake. Other workers at the pump unit were represented by the International Association of Machinists and Aerospace Workers Local No. 761 ("Machinists Union").

In January 1991, General Signal sold part of its subsidiary, the brake unit, to Knorr Brake Holding Corp ("Knorr"). The unions, anticipating a sale of the pump unit, negotiated a supplement to the collective bargaining agreement with Knorr, New York Air Brake and General Signal, that provided union members a one-time opportunity to transfer to the new company should the pump unit be sold or otherwise moved out of Jefferson County by April 8, 1992. The Machinists Union entered into its supplemental agreement in January 1991; Local 78B entered into a similar supplemental agreement on February 5, 1991.

One year later, on February 14, 1992, General Signal announced that it was closing its pump unit and that such closing would be completed by late 1992. That same day, Knorr announced that it would not honor the transfer rights claiming that the requirements of the supplemental agreement were not met because the plant would not close prior to April 8, 1992. On February 19, 1992, Local 78B and International Union representatives and Local 78B members, including plaintiffs, met to discuss the transfer rights under the supplemental agreement. The International Union unequivocally stated its position that the supplemental agreement was inapplicable and that it would not pursue transfer rights for its members. Local 78 did nothing. Plaintiffs did not initiate grievance procedures to enforce their transfer rights. Plaintiff Lacey was permanently laid off on September 4, 1992; plaintiff Buttry on October 30, 1992.

In the meantime, the Machinists Union, in an effort to pursue transfer rights for its members, filed a grievance with General Signal and Knorr. Knorr immediately sought a judicial declaration of its rights under the Machinists Union's supplemental agreement and the Local 78B supplemental agreement, making Local 78B a party to the action. On June 5, 1992, Knorr, Local 78B, General Signal, and the Machinists Union entered into a stipulation to arbitrate the rights of the parties under the supplemental agreements. Neither the International Union nor Local 78B appeared in the arbitration, although clearly their representatives were called to testify on behalf of the other parties.

Ultimately, on March 30, 1993, the arbitrator issued his award concluding that the supplemental agreement did provide the Machinists Union with transfer rights and ordering Knorr to honor such rights. The award did not, however, address Local 78B's transfer rights under its supplemental agreement, and Knorr has not honored the transfer rights of plaintiffs. Plaintiffs' attempts to intervene in the proceedings to confirm the arbitration award were denied.

## DISCUSSION

### I. STANDARDS FOR SUMMARY JUDGMENT

██ Summary judgment is appropriate only when the moving party shows that no genuine issue of material fact exists as a matter of law. *See, e.g.,* Fed.R.Civ.Proc. 56(c); *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 250, 106 S.Ct. 2505, 2511, 91 L.Ed.2d 202 (1986). An unresolved factual issue is one that a reasonable fact-finder could decide in favor of either party. *Anderson,* 477 U.S. at 250, 106 S.Ct. at 2511.

## II. STATUTE OF LIMITATIONS

■ The parties do not dispute that a six-month statute of limitations applies to plaintiffs' claim, which is a hybrid claim of breach of duty of fair representation and breach of the collective bargaining contract. *See DelCostello v. Teamsters*, 462 U.S. 151, 169–72, 103 S.Ct. 2281, 2293–95, 76 L.Ed.2d 476 (1983); *King v. New York Telephone Co.*, 785 F.2d 31, 33 (2d Cir.1986). Further, both parties agree that the time begins to run when a plaintiff knows or reasonably should know that the union has breached its duty of fair representation. *See Flanigan v. IBT, Truck Drivers, Local 671*, 942 F.2d 824, 827 (2d Cir.1991). The dispute concerns when the claim actually accrued and whether defendant is estopped from claiming that the statute of limitations has run.[1]

### A. When Did the Claim Accrue?

■ "A union breaches its duty of fair representation if its actions are either 'arbitrary, discriminatory, or in bad faith.'" *Air Line Pilots Assoc., Int'l v. O'Neill*, 499 U.S. 65, 67–68, 111 S.Ct. 1127, 1130, 113 L.Ed.2d 51 (1991) (quoting *Vaca v. Sipes*, 386 U.S. 171, 190, 87 S.Ct. 903, 916–17, 17 L.Ed.2d 842 (1967)). That duty applies to all union activity. *Id.* "A cause of action ordinarily accrues when 'the plaintiff could first have successfully maintained a suit based on that cause of action.'" *Santos v. District Council of New York City and Vicinity of United Bhd. of Carpenters and Joiners of Am.*, 619 F.2d 963, 968–69 (2d Cir.1980) (quoting *Bell v. Aerodex, Inc.*, 473 F.2d 869, 873 (5th Cir. 1973)).

■ Here, because the essence of the alleged breach is that the defendant failed to pursue plaintiffs' transfer rights under the supplemental agreement, the cause of action must accrue when the plaintiff knew or reasonably should have known that defendant would not pursue such rights. Viewing the evidence in the light most favorable to plain-tiffs, the court concludes that the February 19th meeting marks the time when this action accrued. That was the date, as plaintiffs concede, that they knew defendant would not pursue plaintiffs' rights under the contract. Indeed the Machinists Union, which was subject to a similar collective bargaining agreement, initiated its grievance with the employer just after the employer announced that it would not honor the transfer rights.

*Flanigan v. IBT, Truck Drivers Local 671*, 942 F.2d 824 (2d Cir.1991), is instructive on this issue. There, senior union members claimed to have the right to bump less senior members from assignments to ensure that the senior members had priority to perform work. The union did not interpret the collective bargaining agreement to give the senior members such rights, and, despite the senior members' urging, the union never enforced their bumping rights. The court held that the cause of action accrued when the senior members became aware that the union and the employer construed the contract against them. Moreover, "[t]he Union's subsequent failure to enter the lists upon [the senior members'] behalf on these issues cannot be treated as a continuing violation that precluded the running of the limitation period." *Id.*

Similarly, here, plaintiffs concede that on February 19, 1992, they were aware that the International Union and Knorr interpreted the supplemental agreement as providing no transfer rights to plaintiffs. That is the date the action accrued. Plaintiffs nonetheless contend that "the Union later reversed its position" by agreeing to arbitrate and its failure to arbitrate fairly was an independent breach. However, here, as in *Flanigan*, the plaintiffs initially knew that the union and the employer interpreted the collective bargaining agreement against them. The International Union's subsequent failure to participate in the arbitration was the natural consequence of their known position and the subsequent adherence of that position does

---

1. In a hybrid suit such as the one brought here, in order to recover against either the union or the employer, the plaintiffs must prove that the union breached its duty of fair representation and that the employer violated the collective bargaining agreement. *See DelCostello v. Teamsters*, 462 U.S. at 165, 103 S.Ct. at 2291; *Flanigan*, 942 F.2d at 828. "Unless the plaintiff demonstrates both, he cannot succeed against either party." *Stieber v. Signal Delivery Service, Inc.*, 787 F.Supp. 131 (N.D.Ohio), *aff'd*, 951 F.2d 350 (6th Cir.1991). Thus, in this case, if the claim fails against the International Union it must also fail against New York Air Brake.

not preclude or restart the running of the limitations period. *See Engelhardt v. Consolidated Rail Corp.*, 594 F.Supp. 1157 (N.D.N.Y.1984), *aff'd*, 756 F.2d 1368 (2d Cir. 1985).

Plaintiffs' rely on *Ghartey v. St. John's Queens Hosp.*, 869 F.2d 160 (2d Cir.1989) to claim that when the breach occurs during the arbitration process the claim does not accrue until the arbitration is resolved. *Ghartey* is distinguishable, however, because there the union initially defended the plaintiff's claims and only breached its duty at the arbitration. *See Ghartey*, 869 F.2d at 164. The Second Circuit found: "[W]e deal not with a union manifestly opposing, rejecting or abandoning the interests or claims of a member, but rather with a union purporting to fulfill its duty of fair representation throughout an arbitration hearing process." *Id.* at 165. Here, in contrast, the union never supported plaintiffs' position and indeed announced its opposition to plaintiffs months before the arbitration. The International Union's performance at the arbitration was wholly consistent with its earlier position.

Plaintiffs' reliance on *Katerina Dulay v. United Techs. Corp.*, No. 93–CV–2020, 1994 WL 362149, 1994 U.S.Dist. LEXIS 9051 (D.Conn. June 10, 1994), is similarly misplaced. The court in *Katerina* held that there was a continuing violation that acted to toll the limitations period. The court found that the union "actually had begun to process plaintiff's grievance" and the court distinguished situations like the instant case, where a union "failed to process a grievance" or where a union "repeatedly refused to process a grievance." *Id.* 1994 WL at *2, 1994 U.S.Dist. LEXIS 9051 at *8.

Therefore the court holds that the cause of action accrued on February 19, 1992. Because this action was filed more than six months later it is time barred.

**B. Is Defendant Estopped From Asserting a Statute of Limitations Defense?**

■ Plaintiffs argue that because defendant reversed its position by agreeing to arbitrate, plaintiffs did not initiate their own claims to gain transfer rights and thus defendant should be estopped from arguing that the limitations period has run.[2] *See Cerbone v. International Ladies Garment Workers' Union*, 768 F.2d 45 (2d Cir.1985) ("[E]quitable estoppel is invoked in cases where the plaintiff knew of the existence of his cause of action but the defendant's conduct caused him to delay in bringing his claim.").

■ Equitable estoppel is appropriate "[i]f one person makes a definite misrepresentation of fact to another person having reason to believe that the other will rely upon it and the other, in reasonable reliance upon it does ... act." *Heckler v. Community Health Servs.*, 467 U.S. 51, 59, 104 S.Ct. 2218, 2223, 81 L.Ed.2d 42 (1984); *see also Vadino v. A. Valey Eng'rs.*, 903 F.2d 253, 263 (3d Cir. 1990).

However, plaintiffs here have failed to carry their burden of establishing the elements of equitable estoppel against the International Union.

First, plaintiffs have not shown that defendant made a definite misrepresentation of fact to plaintiffs. Defendant's stipulation to arbitrate is not a misrepresentation of fact because it only approves the submission of the claim to arbitration and does not convey any substantive information about the claim. Moreover, the stipulation was not made to plaintiffs, but was made to the parties to the declaratory judgment action. Indeed, plaintiffs found out about the arbitration partly through a third party. Lacey Deposition at 42.

Second, and equally fatal the estoppel claim, plaintiffs have not shown that it was reasonable to rely on the agreement to arbitrate as an indication that defendant changed its contract interpretation. Defendant never affirmatively stated nor represented that it changed its position with respect to the transfer rights. The agreement to arbitrate at most signaled an assent to resolve the

---

**2.** Defendant perceives this as tolling question. However tolling is at issue when the plaintiff cannot reasonably discover the initial accrual of the action; estoppel addresses the plaintiff who later forgoes her claim.

matter non-judicially—it was not a statement of intent to reconstrue the contract and could not be reasonably relied on as such. In fact, the defendant never changed its position with respect to the transfer rights and any inquiry by plaintiffs would have revealed that consistency. *See Heckler*, 467 U.S. at 59, 104 S.Ct. at 2223–24. (Reliance is not reasonable if plaintiff could have found out the true nature of the statement through reasonable diligence). Indeed plaintiff Lacey admitted that the International Union did not change its position at the arbitration. Lacey Deposition at 43–44. Therefore, defendant is not equitably estopped from asserting a statute of limitations defense.

### III. FAILURE TO EXHAUST ADMINISTRATIVE REMEDIES AND MOTION TO STAY DISCOVERY

Because we hold that plaintiffs' hybrid action is time barred, defendant's remaining arguments regarding plaintiffs' failure to exhaust their administrative remedies and their motion to stay discovery are moot.

**IT IS SO ORDERED.**