Linda BUTTRY and Richard Lacey,
Plaintiffs–Appellants,

v.

GENERAL SIGNAL CORPORATION,
New York Air Brake Corporation and
Glass, Molders, Pottery, Plastics and Allied Workers International Union, AFL–CIO, CLC, Local No. 78B, Defendants,

Glass, Molders, Pottery, Plastics and
Allied Workers, AFL–CIO, CLC,
Defendant–Appellee.

No. 1891, Docket 95–7135.

United States Court of Appeals,
Second Circuit.

Argued Sept. 7, 1995.

Decided Oct. 26, 1995.

John F. Corcoran, Hancock & Estabrook, Syracuse, NY (David E. Peebles, Hancock & Estabrook, Syracuse, NY, of counsel), for Plaintiffs–Appellants.

Mimi C. Satter, Satter & Conner, Syracuse, NY (Carl S. Yaller, Media, PA, of counsel), for Defendant–Appellee.

Before: WINTER, ALTIMARI and McLAUGHLIN, Circuit Judges.

McLAUGHLIN, Circuit Judge:

Linda Buttry and Richard Lacey (together the "plaintiffs") were clerical workers for New York Air Brake Company. They were also members of the Glass, Molders, Pottery, Plastics and Allied Workers International Union, AFL–CIO, CLC, Local No. 78B ("Local 78B"), an affiliate of the Glass, Molders,

Pottery, Plastics and Allied Workers International Union, AFL–CIO, CLC (the "International Union"). When they were laid off, they sued their employer and the International Union in the United States District Court for the Northern District of New York (Frederick J. Scullin, *Judge*), alleging that the employer breached their union's collective bargaining agreement, and that the International Union breached its duty of fair representation.

The International Union moved for summary judgment on the ground that plaintiffs' claim was not timely and, alternatively, that plaintiffs had failed to exhaust their administrative remedies. Plaintiffs opposed the motion, arguing that their claim did not accrue until after completion of certain arbitration proceedings and, alternatively, that the International Union was equitably estopped from asserting a statute of limitations defense against them. The district court granted summary judgment to the International Union, ruling that the claim was time-barred, and dismissed the action.

Plaintiffs now appeal, renewing the same two arguments raised below, and adding that summary judgment was improper because they did not have enough time to conduct sufficient discovery. We hold that, as a matter of law, the plaintiffs were barred by the statute of limitations, and that the International Union was not equitably estopped from asserting the limitations period as a defense. Accordingly, we need not reach plaintiffs' argument regarding the sufficiency of discovery.

## BACKGROUND

Until January, 1991, General Signal Corporation ("General Signal") owned and operated an air brake division named New York Air Brake Corporation ("Air Brake"). This division had three facilities in Watertown, New York: a railroad and mass transit brake products unit (the "brake unit"); a hydraulic pump unit (the "pump unit"); and a foundry unit. Clerical workers at all three units were represented by Local 78B. Plaintiffs were clerical workers in the pump unit, and were members of Local 78B. Non-clerical workers were represented by the International

Association of Machinists and Aerospace Workers, Lodge No. 761 (the "Machinists Union"). Local 78B and the Machinists Union had separate collective bargaining agreements with Air Brake.

In January, 1991, General Signal sold the brake unit to Knorr Brake Holding Corporation ("Knorr"). Fearing that the pump unit would soon be sold to Knorr as well, Local 78B and the Machinists Union entered into supplemental agreements with General Signal, Air Brake, and Knorr. These agreements gave the members of the Local 78B and the Machinists Union a one-time right to transfer to Knorr on a seniority basis should the pump unit be closed or moved from upstate New York before April 8, 1992.

Time confirmed the Unions' worries—on February 14, 1992, General Signal announced that it would close the pump unit by late 1992. Knorr immediately declared that it would not honor the transfer rights created in the supplemental agreements, because the closing would *not* take place before April 8, 1992, as required by the agreements.

On February 19, 1992, International Union officials met with its union members to discuss transfer rights under their supplemental agreement. Both plaintiffs were at this meeting, where Frank Brandao, the International Union Representative, stated categorically that Knorr was within its rights, that the supplemental agreement did not apply, and that the International Union (and Local 78B) would *not* press transfer rights for its members. Plaintiffs had seniority rights which, if exercised in the course of a transfer pursuant to the supplemental agreement, might "bump" other members of Local 78B, i.e. cause them to be laid off. As a result, the meeting became unruly because some members regarded plaintiffs as a threat.

Plaintiff Lacey was laid off on September 4, 1992; plaintiff Buttry's termination followed on October 30, 1992. Consistent with Knorr's public position that the supplemental agreement did not apply, neither Lacey nor Buttry was offered employment with Knorr.

Meanwhile, the Machinists Union, unlike the International Union, chose to fight for the transfer rights of its members by filing a

grievance with General Signal and Knorr. In response, Knorr filed a declaratory judgment action against General Signal, the Machinists Union, and Local 78B (but not the International Union, presumably because the supplemental agreement was in the name of Local 78B only) in state court, seeking a declaration of its rights and responsibilities under the supplemental agreements. The defendants in the state court removed the action to federal court. On June 5, 1992, all parties to the removed action agreed to submit the issue of Knorr's obligations under the supplemental agreements to final and binding arbitration. The stipulation to arbitrate was signed, among others, by Brandao on behalf of Local 78B.

Arbitration hearings were held over four days on August 6 and 7, September 15, and October 6, 1992. Appearances at those hearings were made by counsel for Knorr, General Signal, and the Machinists Union. Although Local 78B was a named party to the arbitration proceedings, no one appeared for Local 78B (or the International Union). Knorr called International Union Representative Brandao as a witness. The Machinists Union called Charles DeMiceli, former President of Local 78B, and Beverly Suschinski, Recording Secretary of Local 78B, as witnesses.

On March 30, 1993, the arbitrator ruled that Knorr had violated the supplemental agreement with the Machinists Union, and ordered reinstatement and back pay. The arbitrator did *not* address whether Local 78B's agreement had been breached, apparently because Local 78B had chosen not to participate in the arbitration hearings. In August, 1993, with motions pending before the district court to confirm the arbitration, the plaintiffs belatedly moved to be substituted as parties for Local 78B in the declaratory judgment suit, or, alternatively, to intervene as additional defendants. Their motion was denied in its entirety.

The plaintiffs brought this action against General Signal, Air Brake (now completely owned and operated by Knorr), Local 78B, and the International Union on September 30, 1993, alleging a "hybrid" claim under the National Labor Relations Act, 29 U.S.C. § 159, and the Labor Management Relations Act, 29 U.S.C. § 185. The plaintiffs asserted that General Signal and Air Brake had breached the collective bargaining agreement with Local 78B, and that Local 78B and the International Union had breached their duty of fair representation. Local 78B failed to answer the complaint or otherwise appear in the hybrid suit. (Apparently, the local chapter was decertified and is now defunct.) General Signal moved to dismiss the claim as against it; plaintiffs did not oppose that motion, and it was granted. The two remaining defendants, Air Brake and the International Union, filed timely answers to the complaint.

The International Union then moved for summary judgment on the grounds that plaintiffs' hybrid claim was not timely and, alternatively, that plaintiffs had failed to exhaust their administrative remedies. Plaintiffs opposed the motion, arguing that their claim was timely because it did not accrue until the arbitrator issued his decision. Alternatively, the plaintiffs argued that the International Union should be equitably estopped from asserting a statute of limitations defense. The district court granted summary judgment to the International Union, ruling that the hybrid claim was time-barred, and that the International Union was not estopped from asserting this defense. *Buttry v. General Signal Corp.*, 871 F.Supp. 136 (N.D.N.Y.1994). The court therefore did not reach the failure to exhaust issue. Because the hybrid claim accrued against Air Brake and the International Union at the same time, the district court dismissed the suit in its entirety.

Plaintiffs now appeal, raising substantially the same arguments asserted below, namely that: (1) their claim did not accrue until the arbitrator issued his award, and therefore that claim is not barred by the statute of limitations; (2) even if the claim is time-barred, the International Union is equitably estopped from asserting a statute of limitations defense; and (3) summary judgment was premature, because plaintiffs did not have enough time to conduct sufficient discovery in support of their claim.

## DISCUSSION

This Court reviews a grant of summary judgment *de novo*. *Litton Indus., Inc. v. Lehman Bros. Kuhn Loeb Inc.*, 967 F.2d 742, 746 (2d Cir.1992). Summary judgment is proper only if, viewing all evidence in the light most favorable to the nonmoving party, there is no genuine issue of material fact. *Id.; see also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250, 106 S.Ct. 2505, 2511, 91 L.Ed.2d 202 (1986). These principles apply equally whether summary judgment is granted on the merits of the claim, or on an affirmative defense such as the statute of limitations. *See Eagleston v. Guido*, 41 F.3d 865, 871 (2d Cir.1994).

### I. *Accrual of the Cause of Action*

The statute of limitations on plaintiffs' hybrid claim is six months. *Ghartey v. St. John's Queens Hosp.*, 869 F.2d 160, 162 (2d Cir.1989); *King v. New York Telephone Co., Inc.*, 785 F.2d 31, 33 (2d Cir.1986); *see also Del Costello v. International Bhd. of Teamsters*, 462 U.S. 151, 169–72, 103 S.Ct. 2281, 2293–95, 76 L.Ed.2d 476 (1983) (discussing nature of hybrid claim, and statutory source of limitations period). The six-month limitations period "begins to run when a plaintiff knows or reasonably should know that the union has breached its duty of fair representation." *Flanigan v. International Bhd. of Teamsters, Truck Drivers Local 671*, 942 F.2d 824, 827 (2d Cir.1991). Once a plaintiff learns of his union's breach of its duty of fair representation, the union's subsequent failure to actually represent the plaintiffs "cannot be treated as a continuing violation that preclude[s] the running of the limitations period." *Id.; but cf. Eatz v. DME Unit of Local Union Number 3*, 794 F.2d 29, 33–34 (2d Cir.1986).

Plaintiffs contend that their cause of action accrued only upon entry of the arbitrator's award on March 30, 1993, and therefore, their action, filed on September 30, 1993, is timely. We disagree.

At the February 19, 1992, union meeting, Brandao stated unequivocally that the plaintiffs had no rights under the supplemental agreement, and that the International Union would do nothing for them. In their depositions, both plaintiffs conceded that when they left that meeting they both knew that the International Union would not press their rights under the supplemental agreement. Thus, on February 19, 1992, plaintiffs were aware of both Knorr's breach of the collective bargaining agreement, and the International Union's breach of its duty of fair representation.

We reject plaintiffs' contention that the International Union "reversed its position" when Brandao signed the stipulation on Local 78B's behalf, agreeing to submit Knorr's transfer-right obligations to arbitration. The International Union indisputably stated at the February meeting that they would do absolutely nothing for the plaintiffs, and never in fact changed that position. Neither the International Union nor Local 78B formally appeared as a party at the arbitration hearings, and at no time did the International Union purport to act as an advocate for the plaintiffs' rights. Plaintiffs could hardly have expected otherwise given that the International Union was faced with a conflict between two groups of employees that it represented.

We also reject plaintiffs' contention that *Ghartey v. St. John's Queens Hosp.*, 869 F.2d 160 (2d Cir.1989), salvages their time-barred claim. In *Ghartey*, the union actively represented the plaintiff's interests in the arbitration proceeding—it simply did such a poor job that its representation fell below a threshold of adequacy. We held that, under those odd circumstances, an unsophisticated employee could not be expected to realize that her union representative had provided inadequate representation until the adverse decision had been rendered. *Id.* at 164–65. Therefore, under the "knew or should have known" test for accrual of the hybrid claim, the employee in *Ghartey* first "should have known" about that claim only after entry of the arbitrator's decision.

*Ghartey*, however, emphasized that it was not dealing "with a union manifestly opposing, rejecting or abandoning the interests or claims of a member, but rather with a union purporting to fulfill its duty of fair representation throughout an arbitration hearing pro-

cess." *Id.* at 165. In contrast, here, the International Union "manifestly" opposed and rejected plaintiffs' interests by announcing several months before arbitration that it did not believe the plaintiffs had a right to transfer, and that the International Union would not press any such rights. And the International Union, appearing only as a witness for other parties at the arbitration hearings, did not "purport to fulfill its duty" of representing the plaintiffs.

Accordingly, we hold that the plaintiffs' cause of action accrued on February 19, 1992, and that the plaintiffs' claim, filed over 20 months later, was therefore time-barred.

## II. *Equitable Estoppel*

Plaintiffs alternatively argue that, even if their claim is technically time-barred by the six-month statute of limitations, the International Union should be equitably estopped from interposing the defense. Again, we disagree.

■■■ A defendant may be equitably estopped from asserting the statute of limitations "in cases where the plaintiff knew of the existence of his cause of action but the defendant's conduct caused [the plaintiff] to delay in bringing his lawsuit." *Cerbone v. International Ladies' Garment Workers' Union,* 768 F.2d 45, 50 (2d Cir.1985); *see also Keating v. Carey,* 706 F.2d 377, 382 (2d Cir.1983). To invoke equitable estoppel, a plaintiff must show that: (1) the defendant made a definite misrepresentation of fact, and had reason to believe that the plaintiff would rely on it; and (2) the plaintiff reasonably relied on that misrepresentation to his detriment. *See Heckler v. Community Health Services,* 467 U.S. 51, 59, 104 S.Ct. 2218, 2223, 81 L.Ed.2d 42 (1984).

In virtually identical affidavits plaintiffs both claimed that, upon learning in June, 1992 of the stipulation to arbitrate, they believed that the International Union had reversed itself and had undertaken to represent their interests. In support of this belief, plaintiffs point specifically to an alleged statement made to Buttry by Jim Pinsonneault, a shop steward of Local 78B, that the International Union had agreed to press their rights in the arbitration. It is necessary to address the plaintiffs' equitable estoppel arguments separately.

■■■ In Lacey's case, we need not tarry, as he has shown neither a misrepresentation made to him by the International Union, nor reasonable reliance. Brandao's signature on the arbitration stipulation was not a representation made to Lacey. In fact, Lacey never claims to have seen the stipulation, but merely to have heard about it from third parties. In addition, the alleged statement by Pinsonneault was made to Buttry, not Lacey. Again, Lacey learned of this statement only from others. In sum, at no time did any International Union representative make a misstatement to Lacey upon which he can bottom an equitable estoppel argument.

Lacey's deposition, furthermore, makes clear that he did not rely upon any alleged misstatements by the International Union. Indeed, he conceded that he had heard that the International Union had *not* changed course on the issue of transfer rights under the supplemental agreement. From his own statements, then, Lacey knew in February, 1992 that he had been wronged by the International Union, and nothing subsequently changed that assessment. As for assertions of reliance in his affidavit, Lacey puts his money on the wrong horse: "[i]t is well settled in this circuit that a party's affidavit which contradicts his own prior deposition testimony should be disregarded on a motion for summary judgment." *Mack v. United States,* 814 F.2d 120, 124 (2d Cir.1987); *see also Jones v. General Motors Corp.,* 939 F.2d 380, 385 (6th Cir.1991) ("a plaintiff may not create a factual issue for the purpose of defeating a motion for summary judgment by filing an affidavit contradicting a statement made in a prior deposition"). We therefore hold that the International Union is not equitably estopped from asserting the limitations period as a defense as against Lacey.

■■■ Buttry's case for equitable estoppel against the International Union is more appealing. Pinsonneault's alleged misstatement *was* made directly to Buttry. *But see Boss v. International Bhd. of Boilermakers,* 567 F.Supp. 845, 847–48 (N.D.N.Y.) (a local

union chapter is not an agent of the international union if that local chapter is autonomous and independent), *aff'd* 742 F.2d 1446 (2d Cir.1983). And Buttry's repeated attempts to contact International Union officials to discuss their planned role at the arbitration lend some credence to her claims of reasonable reliance. *But see King,* 785 F.2d at 35 (it is unreasonable to rely upon "vague oral assertions of low level officials of the local union that [a] matter was to be arbitrated" when high level officials have flatly stated that the union will not act on the plaintiff's behalf (internal quotations omitted)). Finally, even though several of Buttry's deposition statements suggest that she knew that she had been wronged by the International Union in February, and did not change that view, she never positively stated, as Lacey did, that she thought the International Union had maintained their original position all along. Thus, her affidavit does not directly contradict her deposition testimony.

The district court held that Buttry could show neither a misrepresentation nor reasonable reliance. We assume, without deciding, that Buttry could make such a showing, and affirm on different grounds. *See Richardson v. Selsky,* 5 F.3d 616, 621 (2d Cir.1993) ("we may affirm on any basis supported by the record, including grounds on which the district court did not rely"); *Pierce v. F.R. Tripler & Co.,* 955 F.2d 820, 829 (2d Cir. 1992). We find that, even if Buttry relied on a misrepresentation made to her by the International Union, she had to bring her action within a reasonable time after she became aware that the International Union had made the misrepresentation. This she did not do.

To invoke an estoppel as a shield against a statute of limitations defense, a plaintiff "must show that he brought his action within a reasonable time after the facts giving rise to the estoppel have ceased to be operational." *Overall v. Estate of Klotz,* 52 F.3d 398, 404 (2d Cir.1995) (citation and internal quotation marks omitted). Although we applied New York law in the cited case, the same principle applies as a matter of federal law. *Keefe v. Bahama Cruise Line, Inc.,* 867 F.2d

1318, 1324 (11th Cir.1989) (per curiam). An equitable estoppel cannot indefinitely extend the limitations period. Thus, "[o]nce the circumstances inducing reliance are exposed, the plaintiff's obligation to timely file is reimposed." *Id.* We therefore hold that, as a matter of federal law, where a plaintiff's cause of action has accrued, but a later misrepresentation by the defendant equitably estops that defendant from asserting the limitations period as a defense, the plaintiff must still bring his action within a reasonable time after actual or constructive knowledge of the misrepresentation. *See id.; Ott v. Midland–Ross Corp.,* 523 F.2d 1367, 1370 (6th Cir.1975).

While the reasonableness of the plaintiff's delay must be evaluated on a case-by-case basis, a good benchmark for comparison is the "unused" portion of the limitations period. *Keefe,* 867 F.2d at 1325; *Ott v. Midland–Ross Corp.,* 600 F.2d 24, 34 (6th Cir. 1979). Thus, if three months elapse between accrual of the cause of action and the misrepresentation creating the estoppel, and if the applicable statute of limitations is one year, then the unused portion of the limitations period is nine months; and the date nine months following the plaintiff's discovery of the misrepresentation will provide a good starting point for evaluating the reasonableness of the plaintiff's filing. We do not mean to say that any action brought after the unused portion of the limitations period has expired is automatically, or even presumptively, unreasonable. *See Keefe,* 867 F.2d at 1325; *Ott,* 600 F.2d at 34, n. 12. Reasonableness is a determination to be made on the facts and circumstances of each case. The unused portion of the limitations period, though, is "a significant circumstance to be evaluated in assessing the plaintiff's punctuality." *Keefe,* 867 F.2d at 1325.

We have no trouble finding that Buttry's delay in filing of her action here was patently unreasonable. Buttry's cause of action accrued on February 19, 1992. The alleged misrepresentation occurred in June of that same year. Thus, at the time that equitable estoppel "set in," approximately four months of the six-month limitations period had run. This left Buttry with roughly two months of

unused limitations period. She eventually brought her case on October 30, 1993, more than *eleven* months from the last day of the arbitration hearings, the day on which Buttry should have known that the International Union was in fact not representing her interests at the arbitration. Indeed, her action was filed *six* months after the entry of the arbitration award on March 30, 1993, the date on which Buttry concedes she had actual knowledge that the International Union had not represented her interests in arbitration. Under the facts of this case, and where two-thirds of the limitations period had run before the alleged misstatement, a delay equal to the full six-month limitations period over again is unreasonable as a matter of law. We therefore hold that the International Union is not equitably estopped from asserting the limitations period as a defense as against Buttry.

Because Lacey did not reasonably rely upon a misstatement by the International Union, and because Buttry did not bring her action within a reasonable time after she discovered the International Union's alleged misrepresentation to her, the International Union is not equitably estopped from raising the limitations period as a defense.

CONCLUSION

In sum, we hold (a) that plaintiffs' cause of action accrued on February 19, 1992, and (b) that the International Union is not equitably estopped from asserting the limitations period as a defense. We do not reach plaintiffs' argument that summary judgment was improperly granted before they completed discovery. Nothing that plaintiffs could have obtained in discovery would change the fact that their claim was time-barred.

We have considered all of plaintiffs' additional arguments, and find them to be without merit. Accordingly, the judgment of the district court is affirmed.