James F. TOBIN, et al., Plaintiffs,

v.

J.J. BARRY, etc., et al., Defendants.

86 Civ. 0631 (GLG).

United States District Court,
S.D. New York.

March 31, 1987.

Clifton & Schwartz, New York City, by Arthur Z. Schwartz, of counsel, for plaintiffs.

Sherman, Dunn, Cohen, Leifer & Counts, P.C., Washington, D.C., by Richard M. Resnick, of counsel, for defendants J.J. Barry and Intern. Broth. of Elec. Workers.

Cummings & Lockwood, Hartford, Conn. by Brian T. Foley, of counsel, for defendants Yonkers Contracting Co., L.K. Comstock & Co. and Yonkers–Comstock Joint.

O'Dwyer & Bernstien, New York City, by Brian O'Dwyer, of counsel, for defendant Northeastern Line Constructors Chapter, National Elec. Contractors Ass'n, Inc.

Blitman & King, Syracuse, N.Y., by Charles E. Blitman, of counsel, for defend-

ant Local 1249, Intern. Broth. of Elec. Workers.

## MEMORANDUM DECISION

GOETTEL, District Judge.

Plaintiff James F. Tobin and the other named plaintiffs are members of Local 501 of the International Brotherhood of Electrical Workers ("IBEW"). The defendants include Local 501's parent union, the IBEW; J.J. Barry, Vice President of the IBEW; and Local 1249 of the IBEW. Additional defendants are the Yonkers Contracting Co., Inc. ("Yonkers"), L.K. Comstock & Co., and Yonkers–Comstock Joint Venture (collectively, the "employer-contractors"), and their bargaining representative, the Northeastern Line Contractors Chapter ("NLCC") of the National Electrical Contractors Association.

This case involves a dispute over work assignments on a project to repair the third rail of the Metro North Commuter Railroad on its Hudson and Harlem divisions. Ordinarily, Local 501 has "jurisdiction" over outdoor electical line construction and repair within Westchester County. "Jurisdiction" means that the local is authorized by the IBEW to handle all electrical work in a particular area. The plaintiffs allege that defendants Barry and the IBEW arbitrarily transferred jurisdiction over the Westchester County segment of the project from Local 501 to Local 1249.[1] Although the plaintiffs have retained their jobs, they are now working under contracts negotiated by Local 1249, rather than their own local. They allege that, because of this, they have suffered financial and political losses.

The plaintiffs assert that this transfer of jurisdiction was a breach of the IBEW constitution, and, therefore, a violation of Section 301 of the Labor Management Relations Act ("LMRA"), 29 U.S.C. § 185 (1982). They claim that the transfer deprived them of their due process rights guaranteed under Section 101(a)(5) of the Labor Management Reporting and Disclosure Act ("LMRDA"), 29 U.S.C. § 411(a)(5) (1982). Furthermore, they allege that the IBEW breached its duty of fair representation to its members and that the employer-contractors on the project breached their contracts with the plaintiffs. Accordingly, the plaintiffs seek to restore jurisdiction over the Westchester County segment of the Metro North project to Local 501, and ask this Court to award them compensatory damages for lost wages and benefits resulting from the transfer. Before us now are motions to dismiss or for summary judgment by all defendants.[2]

■ The NLCC, which negotiated on behalf of the employer-contractors on the Metro North project, moves to dismiss, arguing that the Court lacks subject matter jurisdiction over any claims against it. Initially, we note that it is unclear which of the plaintiffs' claims are addressed to this defendant. The fourth cause of action in the complaint alleges that the employer-contractors have breached their collective bargaining agreement with Local 501. Giving this claim the broadest interpretation, we may perhaps infer that the plaintiffs seek to hold the NLCC responsible for the employer-contractors' alleged breach, because the NLCC is the bargaining agent for the employer-contractors. The instant facts, however, negate the viability of such a claim.

In 1981, the NLCC, on behalf of the employer-contractors, negotiated a collective bargaining agreement with Local 501. That contract expired in 1983 and agreement was never reached between Local 501 and the NLCC on its renewal. Instead, Local 501 entered into separate agreements with individual employer-contractors. Not having been a party to these individual agreements, the NLCC could not have breached them. Thus, the plaintiffs fail to

---

1. Local 1249 already had jurisdiction over the project north of Westchester County. IBEW Local 3 has jurisdiction over the southern portion of the project, from New York County to the Westchester County line.

2. Subsequent to the filing of these motions, the plaintiffs agreed to the entry of an order dismissing their cause of action against Local 1249. Consequently, we need not consider Local 1249's motion for summary judgment.

state a claim for breach of contract against the NLCC.

■ The NLCC also argues that, because it is not a union, the plaintiffs fail to state a claim against it under the LMRDA. As the Second Circuit has stated,

> The uniform current of authority in this Circuit has been to limit the jurisdiction of the District Courts under the Labor–Management Reporting and Disclosure Act to suits based upon allegations that a labor organization or officer or agent thereof acting in his official capacity violated the terms of the Act. Thus it has been consistently held that the Labor–Management Reporting and Disclosure Act regulates only the relationship between the union and its members and not that between an employer and his employees. The legislative history of the statute confirms the correctness of these decisions.

*Thompson v. New York Central Railroad Co.*, 361 F.2d 137, 145 (2d Cir.1966) (citations omitted). *Accord Abrams v. Carrier Corp.*, 434 F.2d 1234, 1250 (2d Cir.1970), *cert. denied, sub nom. United Steelworkers of America v. Abrams*, 401 U.S. 1009, 91 S.Ct. 1253, 28 L.Ed.2d 545 (1971); *Fanning v. United Scenic Artists, Local 829*, 265 F.Supp. 523, 526 (S.D.N.Y.1966). Thus, even if the NLCC were an employer, since it is neither a labor union nor an agent of a labor union, it is not a proper defendant in a cause of action brought under the LMRDA. The plaintiffs have asserted no other claims against this defendant, nor do they request any relief from the NLCC. Accordingly, we grant the NLCC's motion to dismiss.

The other defendants have moved for summary judgment, asserting that the plaintiffs' claims are barred by both their failure to exhaust internal union remedies and the applicable statute of limitations.[3]

**1. Exhaustion of union remedies.**

In response to the defendants' assertions that they have failed to exhaust intraunion remedies, the plaintiffs claim that they attempted to do so, but that, if they failed, it was because they were affirmatively misdirected or left without assistance by their union representatives. The underlying facts are summarized below.

On April 18, 1985, defendant J.J. Barry, Vice President of the IBEW, informed Local 501 that the IBEW was transferring jurisdiction over the Westchester County section of the Metro North project from Local 501 to Local 1249. James Tobin was at the Local's office on that day and, on behalf of the plaintiffs, requested that Local 501's Business Manager, Graham Dalzell, protest the transfer. Dalzell did so in a letter to the IBEW President dated May 7, 1985. Dalzell stressed that "all our attempts to talk with the International Vice President who made the decision have fallen on deaf ears" and asked "for an opportunity to present all the facts to you." On May 25, 1985, the plaintiffs made an additional effort to appeal the transfer by sending what Tobin calls an "informal" petition to Barry requesting that he return the project's jurisdiction to Local 501.

On July 2, 1985, the IBEW President sent a letter to Local 501 explaining his reasons for deciding to transfer jurisdiction. He denied the May 7, 1985, request to reinstate Local 501's jurisdiction over the Metro North project. Dalzell did not inform the plaintiffs that he had received this reply from the IBEW President. Vice President Barry never responded directly to the plaintiffs' "informal" petition. However, he sent an IBEW representative, Donald J. Funk, to meet with the plaintiffs in late July or early August 1985. Funk discussed the plaintiffs' concerns, but did not

---

**3.** The employer-contractors also contend that the plaintiffs fail to state a claim against them for breach of a collective bargaining agreement because they never entered into such an agreement governing the plaintiffs' employment. The complaint alleges that the plaintiffs were employed on the Metro North project by a company called Power Traction, Inc., a wholly owned subsidiary of Yonkers. The plaintiffs also allege that, in the course of their employment they have been employed by all of the named employer-contractor defendants. In view of this, we believe that the plaintiffs have raised a sufficient issue of fact to require denial of this branch of the defendants' motion for summary judgment.

expressly *inform* them that their requests had been officially denied.

The defendants contend that the plaintiffs failed to use the procedure provided by the IBEW Constitution for appeals from decisions of the International President. Section 16 of the IBEW Constitution provides as follows:

> Appeals to the I.P. [International President] and to the I.E.C. [International Executive Council], and to the Convention, to be considered, must be made within thirty (30) days from the date of the decision appealed from. (Appeals to the I.E.C. and to Conventions must be filed with the I.S. [International Secretary].) If no appeal is made within thirty (30) days from the date that any decision is rendered, such decisions shall be considered final.

IBEW Const. art. XXVII, § 16. The plaintiffs admit that they did not follow this procedure. They contend, however, that when they tried to appeal the decision, they were impeded by the union's failure to give them information and assistance.

■ A court may require a union member to exhaust intraunion remedies prior to bringing suit against his union. This requirement is within the court's discretion; it is not absolute. *Johnson v. General Motors*, 641 F.2d 1075, 1078 (2d Cir.1981), *citing NLRB v. Industrial Union of Marine & Shipbuilding Workers*, 391 U.S. 418, 426, 88 S.Ct. 1717, 1722–23, 20 L.Ed.2d 706 (1968). In determining whether to require exhaustion, the court must balance the right of union members to assert federal claims arising under LMRDA section 101(a)(4) with the policy of judicial noninterference in union affairs.

In deciding whether to require exhaustion of intraunion remedies based on these facts, we follow the guidelines established by the Second Circuit in *Johnson v. General Motors, supra,* 641 F.2d 1075. As the court said in *Johnson,*

[t]he union changes roles in a case of this kind.... [W]hen the union member seeks relief through intraunion procedures, the Local and the [parent] will likely be in a posture adverse to their member. Under such circumstances, a duty ought to rest upon the union to inform its members of available internal remedies.

*Id.* at 1082. The *Johnson* court held that the union bears the burden of establishing entitlement to the exhaustion defense in this kind of case. The union must show "that the intraunion remedies are in fact (1) adequate, (2) not futile, and (3) reasonable under the circumstances." *Id.* at 1083. The plaintiffs admit that the intraunion remedies are adequate and not futile. They allege, however, that those remedies are not reasonable under the circumstances.

■ The IBEW and Barry admit that the plaintiffs' appeal here was "unprecedented." Therefore, it was reasonable for the plaintiffs to expect the union to advise them about the correct procedure. None of the union representatives did so. Moreover, no union officer or representative expressly advised the plaintiffs that their appeals had been denied. Dalzell did not tell the plaintiffs that he had received the IBEW President's letter, dated July 2, 1985, denying their appeal.[4] Nor did Barry inform the plaintiffs that their "informal" petition failed to meet IBEW Constitutional requirements for an appeal. Without this information, the plaintiffs could not take the next step.

Having considered these facts in the light most favorable to the plaintiffs, as we must on defendants' motion for summary judgment, we find that requiring the plaintiffs to exhaust their intraunion remedies is unreasonable under these circumstances, and that the union defendants have failed to show otherwise. Accordingly, the motion for summary judgment on the basis of

---

**4.** The defendants note, however, that on July 5, 1985, Tobin filed an unfair labor practice charge with the National Labor Relations Board against the IBEW, challenging transfer of jurisdiction on the Metro North project. This charge was later withdrawn. The defendants would have us assume that this charge was filed in response to the IBEW President's letter of July 2. This is a factual issue on which we decline to draw such an inference at this time.

exhaustion of intraunion remedies is denied.

2. Statute of limitations.

The defendants argue that the plaintiffs' suit is time barred under the six-month statute of limitations applicable to claims brought either under the LMRDA, or as hybrid Section 301–duty of fair representation claims. *See DelCostello v. Teamsters,* 462 U.S. 151, 103 S.Ct. 2281, 76 L.Ed.2d 476 (1983). The plaintiffs do not contest that the applicable statute of limitations for their LMRDA and hybrid 301 claims is six months. They assert, however, that the applicable limitations period for defendants' claimed breach of the union constitution is six years, because this is a "pure" 301 claim. Moreover, they contend that even the six-month period has not elapsed because it was tolled while the plaintiffs attempted to exhaust their intraunion remedies.

■ The plaintiffs' claim for breach of the IBEW Constitution is brought pursuant to Section 301 of the LMRA, which gives the federal courts jurisdiction over suits for violation of contracts between labor organizations. These contracts include union constitutions. *United Association of Journeymen & Apprentices of the Plumbing & Pipefitting Industry v. Local 334,* 452 U.S. 615, 101 S.Ct. 2546, 69 L.Ed.2d 280 (1981). Since the LMRA does not provide a statute of limitations, the Supreme Court has approved the traditional practice of borrowing analogous state statutes. *UAW v. Hoosier Cardinal Corp.,* 383 U.S. 696, 86 S.Ct. 1107, 16 L.Ed.2d 192 (1966). Under New York law, the constitution and bylaws of a labor union are treated as contracts between a union and its members. *Polin v. Kaplan,* 257 N.Y. 277, 281, 177 N.E. 833 (1931); *Libutti v. Di Brizzi,* 343 F.2d 460 (2d Cir.1965). Thus, the courts in this Circuit have assigned a six-year statute of limitations to pure Section 301 claims, including claims for breach of a union constitution. *O'Hare v. General Marine Transport Corp.,* 740 F.2d 160, 167 (2d Cir.1984), *cert. denied,* 469 U.S. 1212, 105 S.Ct. 1181, 84 L.Ed.2d 329 (1985); *Ro-*

*donich v. House Wreckers Union,* 624 F.Supp. 678 (S.D.N.Y.1985). This six-year statute of limitations would also apply to the plaintiffs' state law contract claims. Accordingly, the plaintiffs' breach of contract claims under both state law and Section 301 of the LMRA are timely.

Since the parties agree that at least two of the plaintiffs' claims have a six-month statute of limitations, we must determine next whether the plaintiffs filed suit within six months of the date when their causes of actions accrued. The rule in the Second Circuit was outlined in *Santos v. District Council of United Brotherhood of Carpenters & Joiners,* 619 F.2d 963 (2d Cir. 1980). The running of the statute of limitations begins when the plaintiffs "knew or reasonably should have known that a breach had occurred, even if some possibility of nonjudicial enforcement remained." *Id.* at 969. *Accord King v. New York Telephone Co.,* 785 F.2d 31, 34 (2d Cir. 1986).

■ This Court ruled on April 4, 1986, that the statute would be tolled while the plaintiffs made a bona fide effort to exhaust their intraunion remedies. We find that their protests to the IBEW President and Vice President, as discussed above, were bona fide efforts to exhaust those remedies. Hence, the statute was tolled by those efforts.

This tolling ended when the plaintiffs knew or reasonably should have known that their appeal had been rejected. The defendants claim that occurred when the Local received the reply from the IBEW President. However, it appears that Dalzell failed to inform the plaintiffs of this reply. Furthermore, Barry did not respond to the "informal" petition he received from the plaintiffs. Nor did IBEW representative Funk notify the plaintiffs of the status of their appeals when he met them in July or August.

The plaintiffs, however, had the opportunity to question representative Funk about their appeals when they met with him in late July or early August 1986. Over four months had passed since their letter and petition had been sent. Although Funk

failed to notify them expressly that their appeals had been rejected, they reasonably should have known of this when they completed their meeting with him. Thus, the statute began to run after the meeting with Funk. The plaintiffs filed suit on January 21, 1987. Assuming that their "late July or August" meeting with Funk occurred after July 21, 1986, this action was timely commenced within the applicable six-month statute of limitations.

For the reasons stated above, we grant defendant NLCC's motion to dismiss and deny the other defendants' motions for summary judgment.

SO ORDERED.