OPINION OF THE COURT
Andrew V. Siracuse, J.
Plaintiff Cathleen Lindsay was injured during a brief altercation at her apartment at or following a party she held on the night of January 31, 1992. She sued Ronald Lockwood, who was tried and acquitted of assault in connection with the incident, and three friends of Lockwood’s who had come with him to the apartment, alleging in her original complaint that all four "negligently and recklessly engage[d] in [a] concerted course of conduct and[/]or joint venture”. Although the plaintiff apparently identified defendant Lockwood as her assailant at the criminal trial, she has not asserted any such claim in the present action, and has not identified him as such in her pleadings, bills of particulars, or testimony at deposition.
Defendants Lockwood and Matthews have now moved to dismiss the complaint as against them, and the plaintiff has *230 cross-moved to amend her complaint to add the specific allegations contained in her bills of particulars: that the defendants, inter alla, agreed to pursue an individual who had been at the party, organized so as to harass, intimidate, menace, and assault her and others; agreed to trespass and engage in conduct that recklessly created a risk of fighting or tumultuous conduct and in group fighting; encouraged Lockwood, known by them to have a propensity to violence; and aided or encouraged other defendants in all of the above. All of these acts are described as negligent rather than intentional conduct, and the proposed amendments thus do not add any cause of action to the single one pleaded in the original complaint.
This complaint, which may generously be described as unorthodox, substantially blurs the lines between intentional and negligent torts, as well as the distinctions drawn between different forms of concerted action liability. Some consideration of the facts will serve to clarify the issues actually at stake. As the summary judgment motion is brought by the defendants, the evidentiary material submitted will be construed in the plaintiff’s favor.
A short time — about 45 minutes — before the incident there was a fight at the party, and one Ronald Hughes was hit by Steven Livesy, known as "Beaker”. Hughes and his friend Ron Bentley left the party, and Hughes called the pager number of his friend Jeff Matthews.
Matthews was with several friends, the other defendants, at Perkins Restaurant. He returned Hughes’s page and then told the others that there was a party in progress near Monroe Community College, and that they were to meet Hughes and Bentley at the College parking lot. Matthews also told the others that Hughes had been hit in the face by Beaker.
The exact extent of the discussion among the defendants is unclear, although they certainly all knew of the earlier fight, and it is hard to avoid the conclusion that a confrontation with Beaker was one if not the sole reason for the defendants’ going to the party. Bentley, who was not sued, provides the most colorful account of the meeting at the parking lot; he recalls that the others were angry and said, "Let’s go back to the party and see how tough this one kid is that decides to hit Randy, who didn’t do anything”, someone said, "I’m going to *231 kill this guy” and Randy was "like, T just want him dead.’ ”[2] While the defendants insist that their main interests were the beer and women they expected to find at the party, Matthews and Lockwood did admit that they discussed finding Beaker and determining what "his problem was”.
Counting the defendants, Hughes and Bentley, eight or nine people drove from the parking lot to the plaintiffs party. It was now 12:30 a.m. and the party was winding down. Hughes entered and made a scene, jumping up and down and asking for Beaker, who was no longer there. Lockwood ended up wrestling on the floor with someone else never identified. Defendant Jason O’Connell testified that he was unable to enter the apartment because of the press of people, and left. Codefendant Brian Zugehoer testified that someone hit him, unprovoked, on the side of the head and he grabbed his assailant’s wrists and held him in place. Matthews saw Lockwood wrestling and tried to separate the two. He saw no other fighting. Lockwood admitted wrestling with the unnamed person and stated that he responded to Matthews’s requests and began to leave the apartment. He was on his way out when two women attacked him; in the struggle he may have hit the plaintiff.
The plaintiffs account is not altogether different, primarily because she was in her bedroom when the defendants entered and did not go out until she heard the sounds of a fight. She saw from five to seven men she did not know; a friend of hers was fighting with one or two of them. She went up to one of the fighters and told him to leave. He pushed her. She repeated her demand, and he punched her.
The group left and the police were called. The plaintiff later identified her assailant as Ron Lockwood, an identification to which she alludes only indirectly in her deposition.
The plaintiff, as noted above, claims that the defendants negligently engaged in a course of action that created a risk of injury, and that she was injured thereby. Negligence, however, is an odd label for this action. The defendants’ conduct could plausibly be depicted as intentional and directed to *232 wards a tortious end: an assault if not a battery upon Beaker. This purpose can hardly be considered negligent. The only other possible interpretation of the plaintiffs claim is that the defendants conducted themselves negligently while carrying out a scheme to confront Beaker. This, too, is difficult to understand; to find joint (as opposed to individual) responsibility for the negligent carrying out of some concerted plan one would have to find that the defendants agreed as to means as well as to ends. It is easy to see circumstances which would support an intentional conduct claim — if, for example, the plaintiff could show an agreement to menace the partygoers in order to find out where Beaker was hiding; but there can hardly be a conspiracy to commit negligence.
An argument that the defendants negligently (rather than intentionally) created a risk of fighting is tantamount to saying that their mere presence at the party constituted negligence, and this, in fact, appears to be the plaintiffs argument: that fighting at the party was a foreseeable result of the defendants’ plan to confront Beaker. This argument may be appealing on the surface, but it fails in the absence of an overt act by one or more of the defendants at the party itself. The circumstances of Lockwood’s fight are totally obscure, and there is simply no evidence here that the other defendants menaced, threatened or harassed anyone at the party. Moreover, the record shows no sign that any partygoer other than Beaker was ill disposed towards Hughes and his friends, or that any of the defendants anticipated or should have anticipated hostility on the part of those at the party. However it may be disguised, the real issue here is intentional rather than negligent conduct.
Restatement (Second) of Torts § 876 outlines three bases for liability for persons acting in concert, two of which are relevant here:
"For harm resulting to a third person from the tortious conduct of another, one is subject to liability if he
"(a) does a tortious act in concert with the other or pursuant to a common design with him, or
"(b) knows that the other’s conduct constitutes a breach of duty and gives substantial assistance or encouragement to the other so to conduct himself.”
These two theories correspond respectively to conspiracy and aiding and abetting (see generally, Halberstam v Welch, 705 *233 F2d 472, 476-486 [DC Cir 1983]). They shall be treated in reverse order in what follows.
The elements of aiding and abetting are (1) a wrongful act producing an injury, (2) the defendant’s awareness of a role "as part of an overall illegal or tortious activity at the time he provides the assistance; [and] (3) the defendants] * * * knowing[ ] and substantial ] assistance in] the principal violation” (Halberstam v Welch, supra, 705 F2d, at 477). The archetypal aiding and abetting defendant is one who encourages another to commit a tortious act (see, e.g., Rael v Cadena, 93 NM 684, 604 P2d 822 [defendant told assailant to "hit” and "kill” plaintiff]; Restatement [Second] of Torts § 876, comment d, illustrations 4, 5). One who commits a negligent act in common with another is also liable, as, for example, the members of a hunting party who all negligently shoot across a public road (id., illustration 6).
These elements are clearly found in the one New York case most relied upon by the plaintiff, where a crowd at a stag party engaged in throwing others off a boat, resulting in injury; the Fourth Department held, "Liability of an individual defendant will not depend upon whether he actually propelled plaintiff into the water; participation in the concerted activity is equivalent to participation in the [act] resulting in the injury” (Herman v Wesgate, 94 AD2d 938, 939). Those who threw the plaintiff in the water were responsible as principals, while those who, for example, may have grabbed the plaintiff and passed him to the bow of the boat or who shouted encouragement were liable as aiders and abettors.
Liability under this theory requires more than an intention; there must be some overt act on the part of the aider connected with the act causing the injury (see, e.g., Kline v Ball, 306 Pa Super 284, 452 A2d 727 [principal threw trash can in response to encouragement; defendants not liable where plaintiff could not establish who in fact encouraged or assisted]). Moreover, the Restatement adds that "The assistance of or participation by the defendant may be so slight that he is not liable for the act of the other. In determining this, the nature of the act encouraged, the amount of assistance given by the defendant, his presence or absence at the time of the tort, his relation to the other and his state of mind are all considered” (Restatement [Second] of Torts § 876, comment d). Here the evidence shows no act of encouragement by the other defendants that would constitute aiding or abetting the assault. The defendants’ presence at the party by itself is *234 not a wrong resulting in injury and driving to the party was not aid given in connection with a tortious act; the causal relationship is too distant and, as stated above, the court will not consider such presence a negligent act in itself. The plaintiff did not testify that anyone gave assistance or encouragement to her assailant, nor can any be proved from the defendants’ testimony. Without such proof there is no issue of fact to be tried; the plaintiff has failed to establish a prima facie case of liability for aiding and abetting, and her claim fails insofar as it is based on that theory (see, Perry v City of New York, 170 AD2d 350 [mere presence at improper arrest insufficient]; Duke v Feldman, 245 Md 454, 226 A2d 345 [wife not liable for husband’s assault when she was present and took pleasure in it and drove him away; no assistance and evidence insufficient to create a jury question]).
Conspiracy as a tort concept requires (1) an agreement (2) to participate in an unlawful act, "(3) an injury caused by an unlawful overt act performed by one of the parties to the agreement; (4) which overt act was done pursuant to and in furtherance of the common scheme” (Halberstam v Welch, supra, 705 F2d, at 477).[3] The commonly cited racing cases, in which two drivers agree to race each other on a public road and one recklessly injures a third party, can be considered under this theory (see, Restatement [Second] of Torts § 876, comment a, illustration 2), although it might also be argued that each racer encourages the other by his acts.
In the present case there is enough evidence from which a jury could infer an agreement on the part of all defendants to commit a tortious act, namely an assault or battery upon Beaker. Such a conspiracy, though, could not, as a matter of law, encompass the act which resulted in the plaintiffs injury. Once the defendants reached the party and found Beaker gone the "communality of unlawful purpose” had vanished (Curtin v Lataille, 527 A2d 1130, 1133 [RI]),[4] and with it the conspiracy.
The effect of a finding of conspiracy is to make the conspirators liable for each other’s foreseeable acts. An unforeseeable *235 act by one of the parties is not chargeable to the others (see, Restatement [Second] of Torts § 876, comment c, illustration 3 [police officer participating in lawful arrest uses improper force]; see also, id,, illustration 11 [assisting in trespass will not give rise to liability for unforeseeable arson]). The evidence, once again construed strictly in the plaintiffs favor, shows that only defendant Ron Lockwood engaged in an altercation at the party, and there is no showing that this fight was related to the earlier one between Beaker and Hughes. It cannot be said that Lockwood’s acts were at all foreseeable by the other defendants as being within the scope of the agreement, and for that reason the plaintiff has failed to show that she was injured by any overt act in furtherance of a conspiracy or by any act that could have been foreseen by the other defendants as arising from it. [5]
This court is mindful of the holding that the existence of concerted activity is generally a question of fact for the jury (Herman v Wesgate, 94 AD2d 938, 939, supra). Nonetheless, there must be some evidence creating a question of fact as to the essential elements of the plaintiffs cause of action. Here there is no issue of aiding or abetting, and no causal connection between any agreement that could be found upon this record and the altercation that led to the plaintiffs injury. There is certainly a question of fact as to the intentional tort of battery, and the court would be required to deny summary judgment had such a cause of action been pleaded. It was the plaintiffs decision, however, to proceed in negligence. The court is empowered to construe the pleadings in accordance with the proof presented (see generally, CPLR 2001, 3017), and it has proceeded under that mandate in the discussion above. Nonetheless, it would defeat the function of notice pleading were the defendants required to contest facts nowhere alleged in either original or amended complaint, or in any bill of particulars. In spite of her testimony at the criminal trial the plaintiff has named nobody as her assailant, and the bill of particulars served on Lockwood contains the same allegations as those served on the other defendants. In short, the plaintiff *236 has done everything possible to show Lockwood that she is not alleging that he deliberately struck her. The court will not construe the pleadings to include a new cause of action for battery after the Statute of Limitations has run — just over a year after the termination of the criminal proceeding against Lockwood (see, CPLR 215 [8]).
The defendants’ motions to dismiss the complaint are granted, with one bill of costs payable equally to each defendant. Since the complaint is without merit, the court on its own motion dismisses it as against the remaining defendants (see, Merritt Hill Vineyards v Windy Hgts. Vineyard, 61 NY2d 106; Grimaldi v Pagan, 135 AD2d 496). No costs are payable to these defendants.

. While phrased as direct quotes in the examination before trial transcript, these are patently paraphrases, and Bentley throughout his deposition was unable to identify any statement or indeed any action with a specific individual. For example, he recalled Lockwood as a "lunatic” and, although he did not witness the incident, told police that he thought Lockwood had been the one who hit the plaintiff on the strength of this belief.

. Defendants argue, correctly, that there is no free-standing tort of conspiracy in New York. There is, however, joint liability under a common action theory for an act in itself tortious (see, Alexander & Alexander v Fritzen, 68 NY2d 968).

. Although the Supreme Court of Rhode Island considered this as an aiding-and-abetting case, the facts — a shooting some time after an abortive gang fight — are as amenable to a conspiracy analysis.

. At oral argument the plaintiffs attorney referred to Ron Bentley’s allegations that Lockwood was a "lunatic” as evidence of negligence — in essence, that the other defendants were negligent in involving someone known for his irascibility. There is no admissible proof, however, that Lockwood was violent, that the other defendants knew of such a tendency, or that they had any basis for expecting him to pick a fight with a stranger if one with Beaker was not forthcoming.