Susan E. SHEEHAN, Plaintiff,

v.

**UNITED STATES POSTAL SERVICE,** Branch 81 of the National Association of Letter Carriers, Branch 358 of the National Association of Letter Carriers, National Association of Letter Carriers, and Michael Hoag, Defendants.

No. 96–CV–1804 (LEK/DRH).

United States District Court, N.D. New York.

Dec. 19, 1997.

McPhillips, Fitzgerald Law Firm, Glens Falls, NY, for plaintiff; Daniel J. Hogan, of counsel.

U.S. Postal Service, Law Dept. of Windsor Field, Windsor, CT, for U.S.Postal Service; Andrew L. Freeman, of counsel.

Cohen, Dax Law Firm, Albany, NY, for other defendants; Richard B. Miller, of counsel.

Cohen, Weiss and Simon, New York, NY, for other defendants; Joseph J. Vitale, of counsel.

## MEMORANDUM–DECISION AND ORDER

KAHN, District Judge.

### I. Background

Plaintiff was employed as a letter carrier by the branch of the United States Postal Service ("USPS") located in Glens Falls, New York, from October, 1986 until when her termination around February, 1996. Defendant Branch 81 of the National Association of Letter Carriers ("Branch 81") acted as a labor union representing plaintiff's employment interests until October 15, 1996, at which time it was merged with another union. Subsequently, plaintiff was represented by Branch 358 of the National Association of Letter Carriers ("Branch 358") (collectively, "the Union"). Defendant Michael Hoag ("Hoag") was the president of Branch 81 at all times relevant.

On July 12, 1994, USPS sent plaintiff a letter informing her that she was not completing her route within the time established by USPS as appropriate. Another such letter was sent on July 13, 1994. By letter dated August 1, 1994, plaintiff was placed on a one week suspension without pay. Plaintiff brought grievances against each of the three letter actions.

Further, plaintiff requested a special inspection to evaluate her route and determine if the established time was insufficient. The request was denied, and plaintiff brought a grievance against this decision. Around September, 1994, USPS placed plaintiff on a 14–day suspension without pay for her failure to complete her route more quickly. Plaintiff also brought a grievance against this suspension.

On December 14, 1994, while she was still waiting for her grievances to be decided, plaintiff's employment was terminated. Plaintiff filed a grievance, but was denied in the first step of the process. The second step was handled by Hoag and USPS Postmaster Ron Marcellus. On January 6, 1995, this step also proved unsuccessful. The third step was an appeal for arbitration, which had to be brought by the Union within fifteen days of the denial of the grievance.

On or around February 15, 1995, Hoag told the plaintiff and William Cook, Union President of Branch 358 that he had filed such an appeal, when in fact he had not. On April 12, 1995, an Arbitrator ruled on the first three grievances, relating to the two letters of warning and the one week suspension, and found in plaintiff's favor on all counts.

On May 8, 1995, Hoag informed plaintiff that no appeal with regard to her termination grievance had been filed, and that any further appeal was now impossible. However, the Union and USPS had agreed to arbitrate on two issues. First, they agreed to arbitrate the issue of whether the termination grievance, despite being untimely, was arbitrable. In other words, they agreed to arbitrate on whether the claim could be heard on the merits. Second, they agreed to arbitrate the grievance over the second suspension.

On February 20, 1996, the arbitrator ruled that the termination grievance had not been filed in a timely fashion and was therefore not arbitrable, but that the disciplinary actions lodged against plaintiff after she had requested a special inspection were arbitrable. On March 15, 1996, USPS and the Union settled the grievance over plaintiff's two-week suspension. In this agreement, USPS agreed to give plaintiff two weeks' back pay. However, the Union did not pursue any further action on the grievance regarding plaintiff's termination.

On June 23, 1995, plaintiff filed a charge with the National Labor Relations Board (NLRB) against Branch 81, alleging breach of duty of fair representation by failing to process her grievance through appeal. This charge was dismissed on August 28, 1995. Nearly a year later, on May 24, 1996, plaintiff filed a second NLRB charge, alleging that both the Union and USPS had engaged in unfair labor practices. On July 22, 1996, the charges were dismissed on the merits. An appeal was rejected by letter on August

15, 1996. On November 14, 1996, plaintiff commenced the instant action, alleging claims of breach of duty of fair representation, fraudulent misrepresentation, wrongful discharge and conspiracy.

Presently before the Court is a motion by the Union to dismiss all claims pursuant to Rule 12(b)(6) for failure to state a claim, or in the alternative for summary judgment. The Union, supported by USPS, argues that plaintiff's state law claims are preempted by federal labor law, and that plaintiff's federal cause of action against the Union for breach of the duty of fair representation is barred by the Statute of Limitations.

## II. Discussion

As noted, the Union has moved either to dismiss or in the alternative for summary judgment. The Court has considered the declarations and exhibits submitted by the parties, and the statement of facts submitted by both the Union and the plaintiff pursuant to Local Rule 7.1(f), and finds that the factual record is amenable to review for summary judgment.

Summary judgment must be granted when the pleadings, depositions, answers to interrogatories, admissions and affidavits show that there is no genuine issue as to any material fact, and that the moving party is entitled to summary judgment as a matter of law. Fed.R.Civ.P. 56; *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986); *Lang v. Retirement Living Pub. Co.*, 949 F.2d 576, 580 (2d Cir. 1991). Facts, inferences therefrom, and ambiguities must be viewed in a light most favorable to the nonmovant. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986); *Project Release v. Prevost*, 722 F.2d 960, 968 (2d Cir.1983). A genuine issue is an issue that, if resolved in favor of the non-moving party, would permit a jury to return a verdict for that party. *R.B. Ventures, Ltd. v. Shane*, 112 F.3d 54, 57 (2d Cir.1997)(citing *Anderson*, 477 U.S. at 248, 106 S.Ct. 2505). Summary judgment is proper where there is "little or no evidence ... in support of the non-moving party's case." *Gallo v. Prudential Residential Servs.*, 22 F.3d 1219, 1223–1224 (2d Cir.1994) (citations omitted).

### A. Timeliness of Plaintiff's Federal Claim

■ The Supreme Court has held that in an action where employees sue both their employer for breach of the collective bargaining agreement ("CBA") pursuant to § 301(a) of the Labor Management Relations Act ("LMRA"), 29 U.S.C. § 185(a)(1982) and their union for breach of the duty of fair representation (so-called "hybrid" actions), the action must be brought within six months of accrual.[1] *See DelCostello v. International Bhd. of Teamsters*, 462 U.S. 151, 169–171, 103 S.Ct. 2281, 76 L.Ed.2d 476 (1983) (adopting limitations period provided by Section 10(b) of the National Labor Relations Act ("NLRA"), 29 U.S.C. § 160(b)). The Supreme Court reasoned that the "six month period established by the" NLRA was "designed to accommodate a balance of interests very similar to that at stake" in a "hybrid" claim. *Id.* at 169, 103 S.Ct. 2281.

■ Plaintiff has not brought such a hybrid claim, since she has not alleged an action for breach of the collective bargaining agreement under § 301 of the LMRA.[2] However, the Second Circuit has made it clear that a claim for breach of the duty of fair representation, standing alone, is also subject to the six month statute of limitations period. *See Gvozdenovic v. United Air Lines*, 933 F.2d 1100, 1106 (2d Cir.), *cert. denied*, 502 U.S. 910, 112 S.Ct. 305, 116 L.Ed.2d 248 (1991); *Eatz v. DME Unit of Local Union*

---

1. Actions brought by post-office employees based on a collective bargaining agreement are governed by 39 U.S.C. § 1208. However, the language of this provision is substantially identical to that of § 301 of the LMRA, and cases interpreting the latter statute apply to the former. *See Miller v. U.S.P.S.*, 985 F.2d 9, 10 n. 1 (1st Cir.1993).

2. Plaintiff's Memorandum does refer to Count I as including a claim for breach of the agreement. However, the heading for Count I does not mention such a claim, and the paragraphs discuss only the Union's conduct. *See* Complaint at 52–63. Because the first cause of action would fail with or without the claim for breach of the CBA, there is no need to resolve whether or not plaintiff has brought such a claim.

*Number 3 of the International Brotherhood of Electrical Workers,* 794 F.2d 29, 33 (2d Cir.1986). The six month period therefore applies in this case.

■ This period "begins to run when a plaintiff knows or reasonably should know that the union has breached its duty of fair representation." *Flanigan v. IBT, Truck Drivers Local 671,* 942 F.2d 824, 827 (2d Cir.1991). "Put another way, '[a] cause of action ordinarily accrues when the plaintiff could first have successfully maintained a suit in that action.'" *Id.* (quoting *Santos v. District Council of New York City and Vicinity of United Bhd. of Carpenters and Joiners of America,* 619 F.2d 963, 969 (2d Cir.1980) (citation and internal quotations omitted)).

Here, plaintiff became aware on May 8, 1995 of defendant Hoag's failure to file an appeal of plaintiff's termination. On that date, therefore, plaintiff was aware of the breach of duty and could have brought the present action. Plaintiff argues, however, that the running of the statute of limitations was tolled by the second arbitration proceeding which addressed, *inter alia,* the question of whether plaintiff's termination grievance was arbitrable.

■ The principle that an arbitration proceeding tolls the statute of limitations is not clearly established by Second Circuit precedent. Most cases cited by plaintiff found tolling inappropriate on the facts of the case. *See Dittman v. GM–Delco Chassis Div.,* 941 F.Supp. 284, 287–88 (D.Conn.1996), *aff'd,* 116 F.3d 465 (2nd Cir.1997) (no tolling for pursuit of state administrative remedies); *Buttry v. General Signal Corp.,* 68 F.3d 1488, 1492 (2d Cir.1995) (no tolling for arbitration proceedings where defendant Union clearly refused to represent plaintiff in those proceedings). However, the court in *Tobin v. Barry,* 678 F.Supp. 1018 (S.D.N.Y.1987) held that "the statute would be tolled while the plaintiffs made a bona fide effort to exhaust their intraunion remedies." *Id.* at 1022.

Assuming that the statute of limitations was tolled in this case, it is apparent from the undisputed facts that plaintiff's action is nevertheless untimely. Courts have repeatedly held that the statute of limitations is not tolled after such time as the plaintiff knows or has reason to know that the union will not further pursue a grievance. *See Buttry,* 68 F.3d at 1492 (arbitration did not toll statute where Union had clearly stated that it would not appear as a party in the arbitration); *Tobin,* 678 F.Supp. at 1022 (tolling ended when plaintiffs knew or reasonably should have known that appeal had been rejected).

The arbitrator made his decision that the termination was non-arbitrable on February 20, 1996. Plaintiff saw this opinion on March 18, 1996. *See* Vitale Decl. Exh. 1 ¶ 34. Plaintiff admitted in an affidavit to an understanding that the Union would only pursue a claim that was found to be arbitrable. *See id.* at ¶ 35 ("It was my understanding ... that if I won either of the above issues, that the Union would proceed with either remaining grievance claim.").[3]

Subsequent letters to plaintiff made it clear that the Union had no intention of pursuing an appeal to the arbitrator's decision. On March 24, 1996, Hoag sent plaintiff a letter from William Cooke, president of Branch 358, detailing the terms of the settlement. Hoag Decl. Exh. 4. In an accompanying letter, Hoag stated that "this letter settles all of the disputes that were pending concerning you." Hoag Decl. Exh. 3. These two letters unequivocally informed the plaintiff that the Union would pursue her grievance no further. Thus, any toll afforded by the arbitration came to end some eight months before the plaintiff commenced the instant action on November 14, 1996. This action is therefore not timely.

---

**3.** This affidavit, dated June 27, 1996, was given by plaintiff to the National Labor Relations Board in connection with the charge filed against Branch 81, and was obtained by defendants pursuant to a Freedom of Information Act request. It is admissible as non-hearsay pursuant to Fed.R.Evid. 801(d)(2) (admission by party opponent). *See Warren v. Quality Care Service Corp.,* 603 F.Supp. 1174, 1181 (W.D.N.Y.1985) ("Plaintiff's own statements are never hearsay when used against [her].")

Plaintiff argues that the Court should apply the doctrine of "equitable tolling" to allow the action to go forward. A defendant may be equitably estopped from asserting the statute of limitations "in cases where the plaintiff knew of the existence of [her] cause of action but the defendant's conduct caused [the plaintiff] to delay in bringing [her] lawsuit." *Buttry*, 68 F.3d at 1493 (citations and internal quotations omitted). To invoke equitable estoppel, a plaintiff must show that (1) the defendant made a definite misrepresentation of fact, and had reason to believe that the plaintiff would rely on it; and (2) the plaintiff reasonably relied on that misrepresentation to his detriment. *Id.* However, "once the circumstances inducing reliance are exposed, the plaintiff's obligation to timely file is reimposed." *Id.* at 1494 (citation and internal quotations omitted). After that time, plaintiff must bring her action within a reasonable time, generally considered to be within a time equal to the period which remained prior to the misrepresentation. *See id.*

Plaintiff asserts that Hoag's misrepresentation that an appeal had been filed presents this Court with a basis to apply the doctrine. However, until Hoag's misrepresentation was made clear to plaintiff on May 8, 1995, she could not reasonably have known that defendants had breached their duty of fair representation. Therefore, the statute had not begun to run in any case and until that point, there was nothing to toll. *See Flanigan*, 942 F.2d at 827. After that point, the misrepresentation was "exposed," and the equitable tolling doctrine would have no basis for application beyond the six months from May 8, 1995 that plaintiff was already due as her normal limitations period.

Accordingly, plaintiff's unfair representation claim was not timely filed, and summary judgment on that claim must be granted to defendants.

## B. Preemption of State Law Claims

Defendants argue that all of plaintiff's state law claims are preempted by federal labor law. After reviewing plaintiff's claims in light of the three separate doctrines of preemption that the courts have developed in the area of labor law, the Court finds that none of plaintiff's claims may proceed.

### 1. Preemption Under LMRA § 301

Section 301 expressly governs suits for violations of a contract between an employer and a labor organization, but § 301 suits may also be brought by employees.[4] *See Smith v. Evening News Ass'n*, 371 U.S. 195, 200–01, 83 S.Ct. 267, 9 L.Ed.2d 246 (1962).

The Supreme Court has held that "[w]hen resolution of a state law claim is substantially dependant upon analysis of the terms of an agreement made between the parties in a labor contract, that claim must either be treated as a Section 301 claim ... or dismissed as preempted by federal labor-contract law." *Allis–Chalmers v. Lueck*, 471 U.S. 202, 209–11, 105 S.Ct. 1904, 85 L.Ed.2d 206 (1985). A state law claim is independent of the collective bargaining agreement for preemption purposes if the state law claim can be resolved without interpreting the agreement itself, even if the state and federal claims require addressing precisely the same set of facts. *Lingle v. Norge Div. of Magic Chef, Inc.*, 486 U.S. 399, 409–11, 108 S.Ct. 1877, 100 L.Ed.2d 410 (1988); *International Assoc. of Machinists and Aerospace Workers, Local Lodge No. 967 v. General Electric Co.*, 713 F.Supp. 547, 553 (N.D.N.Y.1989). The independent claim must allege a violation of a duty "owed to every person in society." *United Steelworkers of America v. Rawson*, 495 U.S. 362, 370, 110 S.Ct. 1904, 109 L.Ed.2d 362 (1990). In contrast, "questions related to what the parties to a labor agreement agreed, and what legal consequences were intended to flow from the breach of that agreement, must be resolved by reference to uniform federal law, whether such questions arise in the context of a suit for breach of contract or in a suit alleging

---

4. Section 301(a) states:

Suits for violation of contracts between an employer and a labor organization representing employees in an industry affecting commerce ... may be brought in any district court of the United States having jurisdiction of the parties.

29 U.S.C. § 185(a).

liability in tort." *Allis–Chalmers*, 471 U.S. at 211, 105 S.Ct. 1904.

This does not mean that "every dispute ... tangentially involving a provision of a collective bargaining agreement is preempted by § 301 ...." *Id.* at 211–12, 105 S.Ct. 1904. When the meaning of a contract term is not the subject of dispute, "the bare fact that a collective-bargaining agreement will be consulted in the course of state-law litigation plainly does not require the claim to be extinguished." *Livadas v. Bradshaw*, 512 U.S. 107, 124, 114 S.Ct. 2068, 129 L.Ed.2d 93 (1994) (citation omitted)(mere need to refer to undisputed wage rates in CBA to determine amount of damages did not require preemption).

▮ In sum, the appropriate test is whether the [state tort action] confers non-negotiable state-law rights on employers or employees independent of any right established by contract, or, instead, whether evaluation of the tort claim is *inextricably intertwined with consideration of the terms* of the labor contract. If the state tort law purports to define the meaning of the contract relationship, that law is preempted.

*Allis–Chalmers Corp.*, 471 U.S. at 213, 105 S.Ct. 1904(emphasis added).

### a) Wrongful Discharge

▮ To support her claim for wrongful discharge, plaintiff refers to the disciplinary measures taken by USPS and subsequent termination. She asserts that the grounds for such actions, the failure to complete her route within the time USPS had established as appropriate, were invalid, and alleges that the disciplinary actions were found to have been inappropriate by an arbitrator. Thus, the argument appears to be that because the reasons for plaintiff's termination were false, plaintiff was fired without cause. USPS' memorandum indicates that the agreement does provide that employment will not be terminated without cause. USPS Mem. at 8. Such a clause in the agreement is the only source plaintiff can look to for a "good cause" restriction. *See Anderson v. Coca Cola Bottling Co.*, 772 F.Supp. 77, 81 (D.Conn.1991) ("The only 'just cause' provision that could

apply to plaintiff's employment contract is contained in the collective bargaining agreement."). Thus, plaintiff's claim depends directly on rights granted under the agreement. It is therefore preempted under § 301. *See Heaning v. Nynex–New York*, 945 F.Supp. 640, 645 (S.D.N.Y.1996) (plaintiff's claim that he was discharged without just cause was "indisputably" preempted where duty was drawn from the language of the CBA); *Anderson, id.* at 82 ("Plaintiff cannot sustain a claim of wrongful discharge on an allegation of termination without just cause, which would be covered by the collective bargaining agreement.")

### b) Conspiracy

▮ In her claim for conspiracy, plaintiff states that the defendants, Hoag, USPS and the Union, conspired to cause her to lose her employment, and to prevent her from regaining her employment. *See* Complaint ¶¶ 72, 73. The elements of conspiracy are (1) an agreement to participate in an unlawful act; (2) an injury caused by an unlawful overt act performed by one of the parties to the agreement; (3) which overt act was done pursuant to and in furtherance of the common scheme. *See Lindsay v. Lockwood*, 163 Misc.2d 228, 625 N.Y.S.2d 393 (N.Y.Sup.Ct.1994). A conspiracy is not actionable without proof of acts in furtherance thereof and consequent damage. *See Pfenning v. Motto*, 220 N.Y.S.2d 64, 66 (N.Y.Sup.Ct.1961). The alleged overt acts relevant to plaintiff's loss of employment are the disciplinary measures taken by USPS, its subsequent decision to terminate plaintiff's employment, and the Union's failure to properly appeal the grievance related to her termination.

▮ Plaintiff must show that these acts were wrongful. In particular, plaintiff must show that her termination was wrongful, as this is the proximate cause of the injury alleged to have been caused by the conspiracy. *See* Complaint at ¶ 74 ("As a result of the conspiracy, without any cause, plaintiff was dismissed from her position with the USPS because of defendants' wrongful and unlawful acts.") Analyzing the wrongfulness of the discharge, as noted in the discussion

above, will require the Court to interpret the agreement's restrictions on the power to terminate employment. Thus, apparent that the conspiracy claim is also preempted under § 301.

### c) Misrepresentation

 The Court finds that the misrepresentation claim is not preempted by § 301, as none of the elements necessary for liability require an interpretation of the agreement. *See Foy v. Pratt & Whitney Group,* 127 F.3d 229, 234 (1997); *Gonzalez v. Dynair Service Co., Inc.,* 728 F.Supp. 100, 102 (E.D.N.Y.1990). Under New York law, a claim for intentional misrepresentation requires (1) a misrepresentation (2) as to a material fact (3) which was false (4) and known to be false by plaintiff (5) made for the purpose of inducing plaintiff to rely on it (6) which plaintiff reasonably did rely (7) in ignorance of its falsity (8) to her injury. *See Murray v. Xerox Corp.,* 811 F.2d 118, 121 (2d Cir.1987) (citing *Brown v. Lockwood,* 76 A.D.2d 721, 432 N.Y.S.2d 186, 193 (N.Y.App. Div.1980) (citation omitted)).

Most of the elements raise factual questions that do not require this Court to interpret the agreement. For example, determining the falsity of the alleged statement by Hoag depends only on whether or not an appeal was in fact filed, not on any term of the agreement. Likewise, issues of intent which turn on plaintiffs' or the defendants' state of mind involve " 'purely factual questions pertain[ing] to ... the conduct of motivation.' " *Milne Employees Assoc. v. Sun Carriers, Inc.,* 960 F.2d 1401, 1408 (9th Cir. 1991), *cert. denied, Sun Carriers, Inc. v. Milne Employees Ass'n,* 508 U.S. 959, 113 S.Ct. 2927, 124 L.Ed.2d 678 (1993) (quoting *Lingle,* 486 U.S. at 407, 108 S.Ct. 1877).

The reasonableness of the reliance could be viewed as requiring the interpretation of the agreement, in order to determine what the duties of the Union were, and thus what they could reasonably be expected to promise. However, the Second Circuit explicitly rejected this argument in *Foy.* The court found that to accept the argument would mean that "the existence of a collective bargaining agreement would require preemption in all cases involving representations made to employees." *Id.,* 127 F.3d at 234. The Court finds that this ruling compels the conclusion that plaintiff's claim should not be preempted under § 301 because of the element of reasonable reliance.

Finally, the fact of injury can be established without interpretation of the terms of the collective bargaining agreement. The nature of the injury in this case was plaintiff's loss of her right to appeal the grievance ruling as a result of failure by the Union to file in a timely manner. The existence of this injury has been established in arbitration. *See* Complaint Exh. C. Where rights and judgments that rely on a collective bargaining agreement are settled in arbitration, the interpretations of the arbitrator may be relied upon in subsequent litigation as definitive. *See Albradco, Inc. v. Bevona,* 982 F.2d 82, 87 (2d Cir.1992). *See also Capital District Chapter of New York State, P.D.C.A. v. Int'l Brotherhood of Painters and Allied Trades, Local Unions Nos. 201, 12 and 62,* 581 F.Supp. 840, 843 (N.D.N.Y.1983), *aff'd in part, rev'd in part,* 743 F.2d 142 (1984) (court does not review arbitrator's decision for whether interpretation is correct, but for whether decision "draws its essence" from the CBA). Looking to the arbitrator's decision will thus not require the Court itself to interpret the agreement.

It is noted that the actual amount of damages would depend on the likelihood that plaintiff would have ultimately succeeded in her grievance had the Union filed an appeal. If plaintiff's grievance were meritless, than the harm inflicted by failure to pursue the grievance would be substantially reduced. Here, determination of the merits of plaintiff's grievance that she was wrongfully discharged would, as discussed above, require interpretation of the agreement. However, where the court must look to the agreement only to determine the amount of damages, the claim is not preempted on that basis. *See Gonzalez v. Dynair Service Co., Inc.,* 728 F.Supp. 100, 102 (E.D.N.Y.1990) (citing *Lingle,* 486 U.S. at 413 n. 12, 108 S.Ct. 1877.) *See also Int'l Assoc. of Machinists and Aerospace Workers, Local Lodge No. 967 v. General Electric Co.,* 713 F.Supp. 547 (N.D.N.Y.

1989) (claim not preempted where only some terms require interpretation of agreement).

In sum, plaintiff's claim for fraudulent misrepresentation is not preempted by § 301 of the LMRA. *But see Morris v. Local 819, IBT,* 94 CIV. 8010, 1995 WL 293623, *3 (S.D.N.Y. May 11, 1995) (claim against union for promising to take grievance to arbitration and failing to do so preempted by § 301 as union's authority to submit claim to arbitration was defined by the CBA). It is therefore necessary to consider whether the misrepresentation claim is preempted by the NLRA.

### 2. Preemption Under the NLRA

▌ In *San Diego Building Trades Council v. Garmon,* 359 U.S. 236, 79 S.Ct. 773, 3 L.Ed.2d 775 (1959), the Supreme Court held that when an activity is arguably protected by Section 7 of the NLRA, or arguably prohibited by Section 8, "the States as well as the federal courts must defer to the exclusive competence of the NLRB if the danger of state interference with national policy is to be averted." *Id.* at 245, 79 S.Ct. 773, 3 L.Ed.2d 775. Under the "primary jurisdiction" rationale, if a claim can be brought to either state court or before the NLRB, it must be brought before the Board. *See Sears, Roebuck and Co. v. San Diego County District Council of Carpenters,* 436 U.S. 180, 202, 98 S.Ct. 1745, 56 L.Ed.2d 209 (1978). Thus, where elements of the state claim action and the federal labor claim are the same in a "fundamental respect," the state claim is normally preempted. *Local 926, Int'l Union of Operating Engineers, AFL–CIO, et al. v. Jones,* 460 U.S. 669, 682, 103 S.Ct. 1453, 75 L.Ed.2d 368 (1983). When, however, "the conduct at issue is only a peripheral concern of the Act or touches on interests so deeply rooted in local feeling and responsibility that, in the absence of compelling congressional direction, it could not be inferred that Congress intended to deprive the State of the power to act," the action will not be preempted. *Id.* at 676, 103 S.Ct. 1453.

▌ The alleged misrepresentation regarding the status of plaintiff's appeal constitutes a breach of the duty of fair representation that is subject to the jurisdiction of the NLRB. *See Union of Secur. Personnel of Hospitals & Health Related Facilities,* 267 N.L.R.B. 974 (1983) (union violated its duty of fair representation by abandoning grievance filed by member and willfully misinforming him about status of grievance). This precedent establishes that plaintiff's claim could have been brought before the NLRB. The claim is therefore preempted.

Even without such precedent, however, the Court can determine the preemptive effect of defendants' duty of fair representation based on federal caselaw. This duty is derived from sections 8(b) and 9(a) of the NLRA, 29 U.S.C. §§ 158(b) and 159(a), which authorize a union to act as the exclusive representative of all the employees in the collective bargaining process. As the employees' agent, a union owes each employee the "duty of fair representation," i.e. the duty to act "without hostility or discrimination ... [in] complete good faith and honesty ... to avoid arbitrary conduct." *Vaca v. Sipes,* 386 U.S. 171, 177, 87 S.Ct. 903, 17 L.Ed.2d 842 (1967). State law claims are preempted if they attempt to create unions obligations that are subsumed by this duty. *See Condon v. Local 2944, United Steel Workers of America, AFL–CIO,* 683 F.2d 590, 595 (1st Cir.1982) (state-imposed duties on the union are preempted unless they "arise wholly outside the ambit of those obligations circumscribed by a union's duty of fair representation under the collective bargaining agreement"); *Peterson v. Air Line Pilots Ass'n Int'l,* 759 F.2d 1161, 1169 (4th Cir.), *cert. denied,* 474 U.S. 946, 106 S.Ct. 312, 88 L.Ed.2d 289 (1985)(the preemption inquiry in "DFR" cases is "whether the duty of fair representation claim itself 'preempts' the power of the district court to exercise its pendent jurisdiction over related state law claims."); *Oliva v. Wine, Liquor and Distillery Workers Union, Local One,* 651 F.Supp. 369, 371 (S.D.N.Y.1987)(fraud claim was "nothing more than recharacterization[ ]" of claim for breach of duty of fair representation (citations and internal quotations omitted)). Thus, if the state claim "creat[es] no new rights for an employee and impos[es] no new duty on a union not already clearly present under existing federal labor law," it is preempted. *Welch v. General*

*Motors Corp., Buick Motor Div.,* 922 F.2d 287, 294 (6th Cir.1990) (quoting *Maynard v. Revere Copper Products, Inc.,* 773 F.2d 733, 735 (6th Cir.1985)).

The courts, like the NLRB, have found that where a union intentionally misrepresents the status of a grievance, it commits a breach of its duty of fair representation. *See Morris v. Local 819, IBT,* 94 CIV. 8010, 1995 WL 293623, *3 (S.D.N.Y. May 11, 1995) (claim against Union for promising to take a grievance to arbitration and then failing to do so was preempted as duty was already "encompass[ed]" by the duty of fair representation); *Faiola v. Youngstown Steel Door Company,* 1992 WL 135567, No. C85–2562, *4 (N.D.Ohio April 16, 1992) (claim that plaintiffs were falsely told that grievance would be pursued preempted by DFR). The misrepresentation claim in this case thus creates no new rights, and is subsumed by the duty of fair representation. Therefore, plaintiff's misrepresentation claim is preempted by federal labor law, and summary judgment is granted to defendants.[5]

### III. Conclusion

Plaintiff's federal claim for breach of the duty of fair representation is time barred. Plaintiff's state claims are preempted by § 301, by the exclusive jurisdiction of the NLRB, and by the federal duty of fair representation. To the extent that such claims might be able to proceed as § 301 claims, they are timed-barred under the same analysis applied to plaintiff's duty of fair representation claim.

Accordingly, it is

ORDERED that the motion by defendants Union to dismiss or in the alternative for summary judgment on all claims is GRANTED, and the complaint is therefore dismissed; and it is further

ORDERED that the Clerk serve a copy of this order on all parties by regular mail.

IT IS SO ORDERED.

---

5. The Court agrees with the defendants that plaintiff's conspiracy claim, even were it not preempted by § 301 of the LMRA, would be preempted under §§ 7 and 8 of the NLRA. Section (8)(b)(1)(a) prohibits a union from restraining or coercing an employee in the exercise of the right guaranteed by section 7 to form, join and assist labor organizations. Further, § 8(b)(2) prohibits the union from causing or attempting to cause an employer to discriminate against an employee in regard to hiring or tenure for the purpose of discouraging or encouraging membership in a labor organization. 29 U.S.C. §§ 158(b)(2), 158(a)(3). Plaintiff alleges that the motivation of the union in this conspiracy was to prevent her from running against Hoag for branch president, and in retaliation for her having submitted 25 prior grievances. *See* Complaint at 18, 19. If true, then the Union would have clearly attempted to violate her rights under § 7. Further, in alleging a conspiracy between her Union and her employer to end plaintiff's employment to prevent her union activities, plaintiff has arguably alleged an action under § 8(b)(2). *See Local Union 441, IBEW,* 221 N.L.R.B. 214 (1975), *enforcement granted, N.L.R.B. v. Local Union No. 441, Intern. Broth. of Elec. Workers, AFL–CIO,* 562 F.2d 55 (9th Cir. 1977) (union commits unfair labor practice by causing employer to lay off man based on lack of union membership). The Court notes that plaintiff has actually brought the essence of her conspiracy claim before the NLRB. *See* Hoag Decl. Exh. 5. The Board "carefully investigated and considered" the claim and ruled that it "appears to be without merit." *See* Hoag Decl. Exh. 6. Their review of the merits is demonstrative of their jurisdiction over the merits and suggests an awareness of that jurisdiction on the part of the plaintiff. *See Parker v. Connors Steel Co.,* 855 F.2d 1510, 1517 (11th Cir.1988), *cert. denied,* 490 U.S. 1066, 109 S.Ct. 2066, 104 L.Ed.2d 631 (1989) ("[b]y initially pursuing relief with the NLRB the employees have implicitly recognized the Board's jurisdiction over their claims.").